FIFTH DIVISION
November 22, 2006

No. 1-05-0681

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL ROBINSON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Marjorie C. Laws, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant, Daniel Robinson, was charged by indictment with one count of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(A) (West 2002)), a Class 4 felony. After a bench trial defendant was found guilty and sentenced to 12 months' conditional discharge. Defendant on appeal contends as follows: (1) the trial court erred in denying defendant's motion to quash arrest and suppress evidence by finding police engaged in community caretaking; (2) the trial court erred in admitting evidence of defendant's prior DUI convictions; (3) the trial court erred by precluding cross-examination of the arresting officer regarding his grand jury testimony; (4) the trial court erred in precluding lay opinion testimony regarding defendant's lack of intoxication; and (5) the State failed to prove beyond a reasonable doubt that defendant was driving under the influence of alcohol.

## BACKGROUND

Before trial, defendant filed a motion to quash arrest and suppress evidence alleging that his right to be secure from unreasonable search and seizure as guaranteed by the fourth amendment of the United States Constitution was violated.  After a hearing the trial court denied the motion.  Defendant's motion to reconsider was denied.

Defendant also filed a motion in limine at trial to exclude evidence of his two prior violations of section 11-501 of the Illinois Vehicle Code (625 ILCS 5/11-501 (West 2002)).  The trial court stated that it would permit the prior DUI violations to be admitted since the State and the trial court understood these violations to be an element of the current charge of aggravated DUI.

Officer Stevens, the arresting officer and only witness for the State, testified during trial that on May 8, 2002, at 2:21 a.m. he responded to a call to check on the well-being of a man slumped over the wheel of a parked car in front of 941 West Belden in Chicago.  Stevens testified as follows:

"[THE STATE]: What brought you to that area?

[OFFICER STEVENS]: We were responding to a 911 call of check the well being.

[THE STATE]: Once you arrived at 941 West Belden, did you see - - did you see anything?

[OFFICER STEVENS]: Yes.

[THE STATE]: What did you see?

2

[OFFICER STEVENS]: I saw a Cadillac Escalade parked with the engine running.

[THE STATE]: You stated that you saw this Cadillac Escalade parked with the engine running. Was there anyone within that vehicle?

[OFFICER STEVENS]: Yes.

[THE STATE]: Do you see that person here today in court?

[OFFICER STEVENS]: Yes.

[THE STATE]: Would you please point to that person and indicate an article of clothing that he or she is wearing?

[OFFICER STEVENS]: It's the gentleman to the right of Defense Attorney wearing, looks like a beige suit.

[THE STATE]: Your Honor, I would ask that the record reflect the in-court identification of the defendant?

THE COURT: It may.

[THE STATE]: You stated that the defendant was seated in this Cadillac Escalade that was running?

[OFFICER STEVENS]: Yes.

[THE STATE]: Once you saw this, what did you then do?

[OFFICER STEVENS]: I approached the driver's side window.

[THE STATE]: Where was your partner when you approached from the driver's side window?

[OFFICER STEVENS]: My partner approached on the passenger side of the vehicle.

[THE STATE]: Now let me step back for one moment. Once you approached this Cadillac Escalade, had you done anything with regard to your vehicle?

[OFFICER STEVENS]: Yes.

[THE STATE]: What did you do?

[OFFICER STEVENS]: My vehicle was parked to the rear of the subject vehicle. I had my blue lights activated.

[THE STATE]: Was there anything else that you had done in addition to your lights being activated?

[OFFICER STEVENS]: No.

[THE STATE]: Okay. You stated that you then approached this Cadillac Escalade?

[OFFICER STEVENS]: Yes.

[THE STATE]: Once you approached, did you observe - - you stated that the defendant was seated in the Escalade?

[OFFICER STEVENS]: Yes."

Once Officer Stevens approached the driver's-side door, he realized defendant was leaning over the steering wheel, eyes closed, and appeared to be unconscious. He contacted his dispatcher to verify an ambulance was on the way. Meanwhile, his partner was shining her flashlight through the passenger-side door. Stevens began knocking on the window with his knuckles in an attempt to wake up the defendant, as reflected by the following:

"[THE STATE]: Did you observe anything in particular about the defendant?

[OFFICER STEVENS]: Yes.

[THE STATE]: What did you observe?

[OFFICER STEVENS]: He was leaning forward, his eyes were closed, he appeared to be unconscious.

[THE STATE]: When you say he was leaning forward, was his body touching any part of the [c]ar?

[OFFICER STEVENS]: I don't recall if - - if his chest was touching the steering wheel. I just remember that his body was leaning forward.

[DEFENSE COUNSEL]: Objection. Move to strike the answer, I don't recall.

THE COURT: His answer is he can recall. He said that his body was leaning forward.

[DEFENSE COUNSEL]: Okay.

5

THE COURT: Overruled. Go ahead.

[THE STATE]: Once you observed this about the defendant, what did you then do?

[OFFICER STEVENS]: I tapped on the driver's window in an attempt to awaken the driver.

[THE STATE]: How many times did you tap on the driver's side window?

[OFFICER STEVENS]: About 6 times.

[THE STATE]: After tapping on the driver's window, did the defendant do anything?

[OFFICER STEVENS]: No, he appeared unresponsive.

[THE STATE]: Did you do anything else after that?

[OFFICER STEVENS]: Yes.

[THE STATE]: What did you do?

[OFFICER STEVENS]: I grabbed the driver's door handle to see if the door was locked.

[THE STATE]: Was the door locked?

[OFFICER STEVENS]: No.

[THE STATE]: After noticing that the driver's door was not locked, what did you do next?

[OFFICER STEVENS]: I opened the driver's door, and I spoke to the driver in an attempt to wake him up.

[THE STATE]: When you say you spoke to the driver, are you referring to the defendant?

[OFFICER STEVENS]: Yes.

[THE STATE]: Did the defendant wake up at that time?

[OFFICER STEVENS]: No.

[THE STATE]: After the defendant didn't wake up, what did you then do at that time?

[OFFICER STEVENS]: I grabbed the defendant's jacket, and I moved his body back and forth a few times in an attempt to wake him up.

[THE STATE]: After doing that, did the defendant wake up?

[OFFICER STEVENS]: No.

[THE STATE]: Could you describe in a little more detail exactly how you grabbed the defendant's jacket?

[OFFICER STEVENS]: I grabbed his jacket near his lapel area. I was also talking to him at the same time saying wake up, wake up. And I moved him in a side to side motion with his jacket in - - my hands on his jacket, and also talking to him loudly trying to wake him up.

7

[THE STATE]: Approximately how long did you attempt to wake the defendant up in that fashion?

[OFFICER STEVENS]: It was probably about two minutes."

Failing to awaken the defendant, Stevens verified with his dispatcher for a second time that an ambulance was on the way, and he testified as follows:

"[THE STATE]: After the defendant did not wake up at that time, what did you then do?

[OFFICER STEVENS]: I used my police radio to ask the dispatcher if the ambulance was still on the way. There was an ambulance assigned to the situation also.

[THE STATE]: Now, after calling for the ambulance, did you do anything else with the defendant?

[OFFICER STEVENS]: Yes.

[THE STATE]: What did you do?

[OFFICER STEVENS]: I moved him back and forth a few more times, grabbing his jacket and talking to him try[ing] to wake him up.

[THE STATE]: Was the defendant responsive at that time?

[OFFICER STEVENS]: Eventually he was.

[THE STATE]: When you say eventually he was, was the defendant saying anything?

[OFFICER STEVENS]: Initially he was mumbling.  I couldn't make out what he said initially.  But he, I think, eventually said what are you doing.

[THE STATE]: Now, did you during the time that you were trying to wake the defendant up, did you observe anything with regard - - did you observe anything about the defendant?

[OFFICER STEVENS]: Yes.

[THE STATE]: What did you observe?

[OFFICER STEVENS]: He had dilated eyes, he exhibited very slurred and mumbled speech, and he exhibited a very strong odor of alcoholic beverage on his breath.

[THE STATE]: Now, you stated that you had called for the ambulance.  You tried to shake the defendant again to wake him up.  What did you do after that?

[OFFICER STEVENS]: I finally woke him up and I asked him if he was okay.

[THE STATE]: Did the defendant respond to you?

[OFFICER STEVENS]: Yes.

[THE STATE]: What did the defendant state?

[OFFICER STEVENS]: He said he was okay.

[THE STATE]: Now, at that point, did you try to get the defendant out of the vehicle?

[OFFICER STEVENS]: Not at that exact moment. After that I was still taking to him.

[THE STATE]: Okay. So what happened after that?

[OFFICER STEVENS]: I asked him if he had anything to drink that night.

[THE STATE]: Did the defendant respon[d] to you?

[OFFICER STEVENS]: Yes.

[THE STATE]: How did he respond?

[OFFICER STEVENS]: He stated 'I had too much to drink, but I'm home now.'

[THE STATE]: And this is all occurring at approximately 2:30 in the morning?

[OFFICER STEVENS]: Yes."

As reflected by the record, Officer Stevens noticed that defendant had "dilated eyes," "slurred and mumbled speech," and a "very strong odor of alcoholic beverage on his breath." The ambulance pulled up. Stevens asked defendant to step outside the vehicle. Stevens observed that defendant was unable to do so on his own. As such, Stevens grabbed defendant's left arm and left shoulder in order to ensure that defendant "would not fall down" as he exited the car.

Once defendant was out of the car, Stevens asked to see defendant's driver's license. Defendant was unable to locate his wallet, so he gave Stevens permission to conduct a pat down. Stevens found the wallet in defendant's back pocket and he handed it to defendant. Defendant was unable to retrieve his driver's license from the wallet so he gave Stevens permission to assist him. Stevens found the driver's license in "plain view" in the window portion of the wallet.

The paramedics arrived at the scene, and defendant refused medical treatment. He also refused to participate in field sobriety tests. Defendant was taken into custody and brought to the 18th District. Stevens testified that, based on his observations of defendant and his prior experiences, defendant was intoxicated.

The defendant called two witnesses, his wife, Jan Robinson and his friend, Michael Nameche. Nameche testified that on May 7, 2002, he met defendant, defendant's wife, and others at Kelsey's restaurant (Kelsey's), shortly before 9 p.m. Nameche left defendant around midnight. He testified that during the three hours he was with defendant, he did not see him drink any alcoholic beverages.

Defendant's wife, Jan Robinson, testified that on May 7, 2002, defendant met her at Kelsey's around 7 p.m. They met with Nameche from about 9 p.m. to midnight. At 12:20 a.m., Jan Robinson and defendant left Kelsey's to visit two other bars. At 12:50 a.m., they returned to Kelsey's, where they stayed until 1:30 a.m. Jan Robinson testified that both she and defendant had a couple of drinks at Kelsey's, one with dinner and one following dinner.

Jan Robinson went home and defendant went to another bar, Sturgeous. On her way home,

she noticed defendant's car parked at the corner of Belden and Bissell; the motor was not running. Upon arriving home, she realized that she left her book bag, which contained defendant's keys, at Kelsey's. Since Kelsey's was closed, she had a police officer drive her to a friend's house to obtain her spare key. She again saw defendant's car, parked in the same location. She returned to her house around 2:30 a.m. She was not with defendant from 1:30 a.m. to 2:30 a.m. and did not know what he was doing at that time.

After considering the evidence, the trial court found defendant guilty of aggravated driving under the influence of alcohol. Defense counsel filed a motion for judgment of acquittal or, in the alternative, for a new trial. The trial court denied defendant's motion and sentenced him to 12 months' conditional discharge. Defendant appeals.

## COMMUNITY CARETAKER

Defendant argues the motion to quash arrest and suppress evidence should have been granted because "defendant was immediately seized absent reasonable suspicion" in violation of defendant's fourth amendment right to be free from unreasonable search and seizure. Defendant contends the trial court erred in finding police acted as community caretakers. The State argues the trial court did not err in denying defendant's motion to suppress evidence because Officer Stevens was acting within a community caretaking function when he approached defendant, and consequently, his encounter with defendant was not an unreasonable seizure in violation of the fourth amendment.

When reviewing a ruling on a motion to quash arrest and suppress evidence, we accord deference to the trial court's factual findings and credibility determinations and reverse those

conclusions only if they are against the manifest weight of the evidence. People v. Gherna, 203 Ill. 2d 165, 175 (2003). After reviewing the trial court's factual findings, we review de novo the trial court's ultimate legal ruling as to whether suppression is warranted. People v. Pitman, 211 Ill. 2d 502, 512 (2004). A reviewing court is not limited to the evidence presented during the trial court's suppression hearing, but may also consider evidence that was offered during the defendant's trial. People v. Sims, 167 Ill. 2d 483, 500 (1995).

The fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution guarantee freedom from unreasonable searches and seizures by the government. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, §6; People v. Flowers, 179 Ill. 2d 257, 262 (1997). Seizure of a person by a police officer occurs when, by means of physical force or a show of authority, that person's freedom of movement is restrained. United States v. Mendenhall, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980); People v. Brownlee, 186 Ill. 2d 501 (1999).

Courts have recognized three tiers of police-citizen encounters, two of which implicate the fourth amendment. People v. Gherna, 203 Ill. 2d 165, 176-77 (2003). The first of these involves the arrest of a citizen, which must be supported by probable cause, specifically, sufficient facts and circumstances known by the arresting officers to warrant a reasonable person's belief that the arrested person has committed a crime. People v. White, 221 Ill. 2d 1, 21 (2006). The second tier involves a brief investigative detention or Terry stop, which requires a reasonable suspicion, based upon specific and articulable facts, that the person has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); People v.

13

Luedemann, No. 100914, slip op. at 11 (October 5, 2006). The third tier involves consensual encounters, which do not require probable cause or reasonable suspicion and do not implicate fourth amendment interests. People v. Gherna, 203 Ill. 2d 165, 177 (2003); Luedemann, slip op. at 11.

In People v. Luedemann, the Illinois Supreme Court noted that Illinois cases have often referred to the third tier as the "community caretaking" function. Luedemann, slip op. at 11 (and cases cited therein). The court in Luedemann instructed that use of the label "community caretaking" to describe third-tier consensual encounters is incorrect. Luedemann, slip op. at 11. According to Luedemann, "community caretaking," rather than describing a tier of police-citizen encounters, is used "to uphold searches or seizures as reasonable under the fourth amendment when police are performing some function other than investigating the violation of a criminal statute. When a search is involved, courts use the term 'community caretaking' to describe an exception to the warrant requirement." Luedemann, slip op. at 12. The court in Luedemann noted that the proper analysis has nothing to do with encounters being consensual, recognizing that "if 'community caretaking' was just another name for consensual encounters, there would have been no need for the Supreme Court to formulate the exception in the first place." Luedemann, slip op. at 14.

The Luedemann court instructed that cases referring to the third tier of police-citizen encounters as "community caretaking" should no longer be followed for that point. Luedemann, slip op. at 14, citing People v. White, 221 Ill. 2d 1, 21 (2006), People v. Smith, 214 Ill. 2d 338, 351-52 (2005), People v. Murray, 137 Ill. 2d 382, 387 (1990), and People v. Gonzalez, 204 Ill.

14

2d 220, 224 (2003). The consequence of erroneously describing the third tier of police citizen encounters as "community caretaking" was recognized by <u>Luedemann</u> as follows:

"If the third tier of police-citizen encounters is referred to as 'community caretaking,' that would suggest that if the police lack a reasonable, articulable suspicion of criminal activity, they may not approach a citizen unless they are acting in a community caretaking function. This is obviously not the case, as the law clearly provides that a police officer does not violate the fourth amendment merely by approaching a person in public to ask questions if the person is willing to listen. [Citations.] There has never been a requirement that the police must be acting in a community caretaking function to prevent the encounter from turning into a seizure. Indeed, the Supreme Court has stated expressly that the police have the right to approach citizens and ask potentially incriminating questions. [Citations.]" <u>Luedemann</u>, slip op. at 15.

Accordingly, it is clear under <u>Luedemann</u> that the " 'community caretaking' doctrine is analytically distinct from consensual encounters and is invoked to validate a search or seizure as reasonable under the fourth amendment." <u>Luedemann</u>, slip op. at 14. With those principles in mind, we examine what constitutes "community caretaking" in the context of a police-citizen encounter. An encounter is a function of "community caretaking" when it is initiated by law

15

enforcement to check on an individual's well-being, without initial thought of criminal activity. People v. Simac, 321 Ill. App. 3d 1001, 1004 (2001). An officer performs as a "community caretaker" if his purpose in questioning the defendant was totally divorced from detection, investigation, or acquisition of evidence. People v. Croft, 346 Ill. App. 3d 669, 673-74 (2004). An otherwise inoffensive contact between a member of the public and police cannot, as a matter of law, amount to a seizure of a person. Mendenhall, 446 U.S. at 555, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877.

In People v. Carlson, 307 Ill. App. 3d 77, 80 (1999), the court found it was within the scope of an officer's "community caretaking" function to approach a parked vehicle, awaken a sleeping driver and request that he step outside and show his driver's license. We find Carlson instructive. Similar to the instant case, in Carlson after the officer approached the parked vehicle, he observed a person unconscious in the driver's seat. The officer tapped on the window, awakened the driver and asked him to roll down the window. When the window was opened, the officer detected a strong odor of alcohol and asked the driver to step outside and produce a driver's license. Similar to the instant case, the driver had trouble locating his license, had bloodshot eyes and was unsteady. The officer arrested the driver and charged him with DUI after failing the Breathalyzer test at the county jail.

The court in Carlson recognized that whether an encounter constitutes an arrest, a Terry stop, or a "community caretaking" function "depends on the degree of the intrusion or coerciveness surrounding the detention." Carlson, 307 Ill. App. 3d at 80. As recognized by Carlson, the police may question a citizen without triggering fourth amendment protections

16

during a "community caretaking" encounter, so long as the officer does not convey by use of force or show of authority that compliance with his inquiry is required. Carlson, 307 Ill. App. 3d at 80, citing Florida v. Bostick, 501 U.S. 429, 115 L. Ed. 2d 389, 11 S. Ct. 2382 (1991).

"Compelled compliance may be shown by: (1) the presence of several police officers; (2) the display of a weapon; (3) an officer's physical contact with the citizen; and (4) an officer's use of language or tone of voice commanding compliance." Carlson, 307 Ill. App. 3d at 80 (and cases cited therein); Mendenhall, 446 U.S. at 554, 64 L. Ed 2d at 509, 100 S. Ct. at 1877. The facts of the instant case do not demonstrate "compelled compliance." The record reflects that when Officer Stevens approached the car, he was with a female partner, not several police officers, there was no weapon displayed, and no orders compelling compliance were issued. The physical contact by Officer Stevens was made with defendant in order to check his well-being and assist defendant in regaining consciousness.

Similar to Carlson, Stevens was acting as a "community caretaker" by awakening defendant and then asking defendant to produce identification outside of defendant's vehicle. Furthermore, the conduct by Stevens in attempting to awaken the victim was inoffensive conduct given the circumstances. Mendenhall, 446 U.S. at 555, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877. Officer Stevens was assigned to respond to a call to check the well-being of a citizen. The officer's initial concern was the well-being of defendant. Stevens' motive for approaching defendant was not to investigate a crime. Rather, he was responding to a 911 well-being call. His initial encounter with defendant was divorced from detection, investigation or acquisition of evidence. Officer Stevens testified that upon responding to the "well-being" call, he observed

17

defendant, who appeared to be unconscious, slumped over the steering wheel of a car with its motor running. Clearly that situation raised further concern. We reject defendant's argument that "Stevens was no community caretaker, he was involved in an investigative detention." Based on the totality of the circumstances, the initial encounter by Officer Stevens with defendant was not a Terry stop or "seizure" but fell squarely within the officer's "community caretaking" function.

While Officer Stevens undertook his "community caretaking" and determined whether defendant was able to regain consciousness, the officer made certain observations. In the process of waking up defendant and twice verifying that an ambulance was on the way, Officer Stevens observed defendant's dilated eyes, slurred, mumbled speech and a very strong odor of alcoholic beverage on his breath. The officer at that point had reasonable articulable suspicion that the defendant had violated section 11-501 of the Illinois Vehicle Code (625 ILCS 5/11-501 (West 2002)), and was justified in asking the defendant whether he had anything to drink and to step outside the car for investigation pursuant to Terry v. Ohio. See People v. Smith, 224 Ill. App. 3d 511 (1992).

Once defendant exited the car, Officer Steven's reasonable suspicion escalated. We note Stevens testified that defendant was unable to safely exit his vehicle and was unable to retrieve his driver's license from his wallet. Defendant reiterated the fact that he had too much to drink, but that he lived a block away and wanted to just go home. While defendant was standing outside the car, Officer Stevens testified, defendant's speech continued to be slurred and mumbled and his eyes were dilated. Stevens also stated that defendant was able to maintain

18

balance, but would sway and stagger when he walked. Defendant continued to exhibit a strong odor of alcoholic beverage on his breath. The totality of the circumstances, including the defendant's appearance, conduct, and odor, gave Stevens reasonable grounds to believe the defendant had committed the offense of DUI. At that point, the officer had probable cause to arrest defendant, and did so. See People v. Crocker, 267 Ill. App. 3d 343 (1994).

### ADMISSION OF PRIOR DUI ARRESTS

Defendant argues that the trial court erred in denying his motion in limine to preclude introduction of defendant's two prior DUI violations during trial. The State contends the error was harmless. A motion in limine may be used to obtain a pretrial ruling when the State is planning to introduce other crimes evidence at trial. Such motions can promote judicial efficiency and save time and resources. People v. Owens, 299 Ill. App. 3d 818, 822 (1998); see M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.9, at 27 (8th ed. 2004). In reviewing a trial court's ruling on a motion in limine, our standard of review is abuse of discretion. People v. Wilson, 214 Ill. 2d 127, 136 (2005).

Defendant had two previous violations of section 11-501, one resulting in an order of supervision and the other a conviction with an order of conditional discharge. At the close of the State's case, the prosecution moved to admit in evidence People's Exhibit No. 4, which was defendant's certified driving abstract reflecting the prior DUI violations. The following discussion occurred:

"[THE STATE]: We would ask that your Honor take judicial
notice of the defendant's two prior DUI convictions. First one

being from May 15, 1986 under Ticket No. 14099. The second one being August 30, 1988 under Ticket No. 43735.

THE COURT: Any objections?

[DEFENSE COUNSEL]: Judge, I would just reiterate my previous objection, the interplay of aggravated DUI status. This is still prosecuted as a DUI and aggravation is considered only at sentencing and this is not a proper document to be admitted at this time because of the prior circumstances and are only prejudicial in the eyes of the finder of fact.

THE COURT: No, but he is charged–

[DEFENSE COUNSEL]: I understand.

THE COURT: –with aggravated DUI based upon the prior convictions.

[DEFENSE COUNSEL]: That's right.

THE COURT: So it's an element of the offense.

[DEFENSE COUNSEL]: I don't believe it's an element of the offense. I don't think it's an element.

THE COURT: It is similar to unlawful use of weapon by a felon. If that person has been convicted of a felony, then the State is allowed to introduce that because it's a part of the charge. So

> over your objection, People's Exhibit No. 4 will be admitted as evidence also.
>
> [THE STATE]: Your Honor, with that the State would rest."

The erroneous admission of other crimes evidence carries a high risk of prejudice in that it overpersuades the trier of fact. People v. McGee, 286 Ill. App. 3d 786, 794 (1997). This is particularly true when there is an identity between the crime charged and other crimes evidence. People v. Barbour, 106 Ill. App. 3d 993 (1982). The law distrusts the inference that because a person has committed other similar crimes he is more likely to have committed the crime in question. People v. Heard, 187 Ill. 2d 36, 58 (1999). The concern that such evidence overpersuades the trier of fact is valid whether the case is resolved by a bench or a jury trial.

In People v. Alford, 111 Ill. App. 3d 741 (1982), we addressed the impact of improperly admitting other crimes evidence in the context of a bench trial. Alford, 111 Ill. App. 3d at 743. In Alford, the defendant was observed shooting the victim in his car. Defendant was found guilty of aggravated battery after a bench trial. On appeal, defendant argued that the trial court committed reversible error by admitting in evidence testimony regarding a shooting incident involving the defendant that occurred five days earlier because it merely demonstrated defendant's propensity toward criminal activity. In reversing the trial court, we noted that regardless of the fact the defendant had a bench trial, "[i]t is well established that evidence of collateral crimes for which an accused is not on trial is inadmissible if they are relevant merely to establish a propensity to commit criminal acts. The underlying reason for this rule is that such

21

evidence overpersuades the trier of fact, who is likely to convict the defendant merely because it feels that defendant is a bad person deserving punishment, rather than on the basis of facts related to the offense for which he is being tried." Alford, 111 Ill. App. 3d at 743.

In the instant case, defendant's past DUI violations were erroneously admitted and, thus, carried a high degree of prejudice. McGee, 286 Ill. App. 3d at 794. Such prejudice is magnified because the charged crime of aggravated DUI is similar to and has an identity with defendant's past DUI charges. Barbour, 106 Ill. App. 3d at 993. Additionally, it cannot be presumed that the trial court did not consider the improper evidence. People v. Fair, 45 Ill. App. 3d 301, 306 (1977) (admitting improper evidence over defendant's objection negates presumption that trial court did not consider the improper evidence.)

We are mindful that the trial judge is presumed to know the law. "We ordinarily presume the trial judge knows and follows the law unless the record indicates otherwise." People v. Gaultney, 174 Ill. 2d 410, 420 (1996). A trial judge "is presumed to consider only admissible evidence," and such a presumption is overcome only if "it affirmatively appears from the record that improper evidence was considered by the court." People v. Dobbs, 353 Ill. App. 3d 817, 824 (2004). A reviewing court presumes the trial judge in a bench trial knew the law and followed it, and that "presumption may only be rebutted when the record affirmatively shows otherwise." People v. Thorne, 352 Ill. App. 3d 1062 (2004).

The record in the instant case does not allow us to rely on such a presumption. The record reflects the trial court's own words that it mistakenly believed the prior DUIs were elements of

1-05-0681

the charge on trial before it. In the instant case, the record demonstrated the trial court's lack of knowledge of the applicable statutory law and case law. The trial court not only erroneously admitted the prior DUI evidence, but contrary to statute and case law, indicated its mistaken belief that the two prior DUI violations were elements of the offense.

Section 111-3(c) of the Code of Criminal Procedure of 1963 provides, in pertinent part:

"(c) When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the <u>fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense</u> and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial. For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5-5-1 of the 'Unified Code of Corrections,' approved July 26, 1972, as amended; it does not include an increase in the sentence applied within the same level of classification offense." (Emphasis added.) 725 ILCS 5/111-3(c) (West 2004).

In <u>People v. Bowman</u>, 221 Ill. App. 3d 663 (1991), we held that a jury should not be told of

23

a prior DUI when the prosecution seeks an enhanced sentence based upon that prior DUI. Rather, evidence of prior DUIs should be reserved for purposes of sentencing only. The instant case was tried before the court without a jury. However, in the instant case, the judge clearly indicated her incorrect understanding of the law by stating that the prior DUIs were to be considered as elements of the DUI charge against defendant. This was error. Prior DUI violations are not an element of an aggravated DUI charge. People v. Laskowski, 287 Ill. App. 3d 539, 541 (1997). The admission at trial of evidence of defendant's two prior DUI violations, which were only "factors in aggravation that had to be proved at sentencing," was therefore unnecessary under Illinois law. People v. Thompson, 328 Ill. App. 3d 360, 365 (2002).

The State further contends that because nothing in the record indicates the court used the other crimes evidence in an improper way, the error is harmless. The reviewing court should uphold a conviction where other crimes evidence was erroneously admitted only if the properly admitted evidence is so overwhelming that no fair-minded fact finder could have acquitted the defendant. People v. McMillen, 281 Ill. App. 3d 247 (1996). In the instant case, the properly admitted evidence is not overwhelming. The record reflects that no scientific evidence was admitted and the sole evidence of intoxication was presented by way of Officer Stevens' observations and opinion. While we have no quarrel with Officer Stevens or his expertise, we note, however, that he was the State's only witness. Defendant introduced two witnesses who were with him during the relevant hours before his arrest. Collectively, they testified that he did not drive his car and he only consumed a small amount of alcohol in the hours preceding his arrest.

24

It is the duty of the reviewing court to consider the trial record as a whole and to ignore errors that are harmless. People v. Sargent, 357 Ill. App. 3d 946, 950 (2005). However, the erroneous admission of defendant's past DUI convictions was not harmless error. The case was closely balanced and at no point in the record does the judge correct her erroneous interpretation of the law.

For the reasons previously discussed, the trial court erred in denying defendant's motion in limine seeking to preclude defendant's prior DUI convictions from being admitted into evidence during trial and this error was not harmless. On retrial, defendant's motion in limine should be granted.

LAY WITNESS TESTIMONY

Defendant argues the trial court erred by precluding lay witness testimony from defense witness Michael Nameche regarding his opinion of defendant's sobriety. The State responds that the testimony of Nameche was irrelevant because he last observed defendant approximately two hours before defendant was arrested. We note the trial court precluded Nameche's testimony, not because it lacked relevancy, but because the trial court believed a lay witness could not express his opinion on sobriety. We address the admissibility of lay opinion testimony regarding sobriety and the relevancy of such testimony in the instant case.

After providing a proper foundation, defense counsel asked Michael Nameche for his opinion as to whether the defendant was under the influence of alcohol. The State objected and defense counsel argued that a lay person is entitled to offer such an opinion. The trial judge sustained the objection, limiting Nameche's testimony "to what he observed about the defendant

that night." Defense counsel further demonstrated through Nameche's testimony that defendant did not exhibit any signs or symptoms of being under the influence of alcohol and again asked for his "opinion as to whether or not Mr. Robinson was under the influence of alcohol." The State objected and the trial judge sustained the objection. The following exchange then occurred between the trial judge and defense counsel:

"[DEFENSE COUNSEL]: A lay person is also entitled to render an opinion, not just the facts he observed, but an opinion whether or not an individual is under the influence of alcohol as far as it was this witness's opinion. And you sustained the objection when I asked the question. But I'd like to get some case law to present to your Honor on that question.

THE COURT: How is that going to sway me, the trier of fact. This man testified that your client, his speech wasn't slurred, he wasn't walking or swaying. He didn't have any of those symptoms."

There are a significant number of Illinois cases holding that lay opinion testimony regarding sobriety is admissible. Vandeveer v. Preston, 13 Ill. App. 2d 29 (1957) (a lay witness is competent to testify as to whether an individual is intoxicated); People v. Lawson, 86 Ill. App 3d 376 (1980) (lay witness may express opinion on question of intoxication if opinion is based on their personal observation and experience with intoxication); People v. Jacquith, 129 Ill. App. 3d 107 (1984) (lay witness is competent to testify regarding intoxication from alcohol in

prosecution for driving under the influence of alcohol, since such observations are within the competence of all adults of normal experience); People v. Workman, 312 Ill. App. 3d 305 (2000).

The State, relying on People v. Bowman, 357 Ill. App. 3d 290, 299-300 (2005), correctly recognizes the admissibility of lay opinion testimony regarding intoxication in its brief as follows: "Lay witnesses called to testify at a trial 'may express their opinion on the question of intoxication, if their opinion is based on their personal observation of experience with intoxication.' " Bowman, 357 Ill. App. 3d at 299-300. Applying the case law, we conclude the trial court erred in precluding the testimony of Nameche based on its belief that lay opinion testimony of intoxication was not admissible.

We next address the State's argument that "Michael Nameche's opinion of defendant's earlier state (sober or intoxicated) was irrelevant and therefore it was not error for the trial court to exclude it."

Nameche knew defendant for seven years. Up until two hours before defendant's arrest, Nameche had spent three hours with defendant and his wife. Nameche testified he met defendant on May 7, 2002, shortly before 9 p.m. and was with him continuously until shortly after midnight on May 8, 2002. Nameche testified that during that three-hour period, defendant consumed nothing of an alcoholic nature. Nameche also testified that he had been with people under the influence of alcohol several hundreds of times and was familiar with the signs and symptoms of intoxication. Nameche indicated that defendant had exhibited none of those signs or symptoms.

We conclude that Nameche's opinion of defendant's sobriety was relevant even though his

27

observations ended two hours before defendant was arrested. Nameche's observations and opinion, together with those of Jan Robinson, defendant's wife, who observed defendant after Nameche left, provided relevant information as to defendant's consumption of alcohol. Both Nameche and Jan Robinson testified that defendant consumed no alcohol between 9 p.m. and just past midnight. Jan Robinson further testified that defendant consumed no alcohol between midnight and 1:30 a.m. The timeline immediately preceding defendant's arrest was relevant for consideration by the trier of fact. Both Nameche and Jan Robinson provided relevant testimony regarding defendant's consumption of alcohol during that timeline.

To the extent the trial court precluded Michael Nameche from offering his lay opinion on defendant's sobriety, that ruling was error. On retrial, Michael Nameche will be allowed to testify to his opinion as to defendant's sobriety.

## CONFRONTATION CLAUSE

Defendant contends the trial court erred by "precluding defendant's cross-examination of [Officer] Stevens regarding false or misleading testimony he gave before the grand jury." The State argues that defendant forfeited this argument. The State further argues that defendant failed to provide the proper foundation for impeaching Officer Stevens and failed to make an offer of proof regarding the testimony that was excluded. Limitations on cross-examination are reviewed for an abuse of discretion. People v. Wallace, 331 Ill. App. 3d 822, 832 (2002). We address this issue as it may again occur during retrial.

The confrontation clause "provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him.' " People v. West, 355 Ill.

28

App. 3d 28, 34 (2005), quoting U.S. Const., amend. VI.  Under the confrontation clause, defense counsel is guaranteed an opportunity for effective cross-examination, "not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Delaware v. Fensterer, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985).

Defendant's sixth amendment right to cross-examine a witness is a fundamental right. Wallace, 331 Ill. App. 3d at 831-32.  Cross-examination is the principal method by which the credibility of a witness is tested.  Davis v. Alaska, 415 U.S. 308, 316, 39 L. Ed. 2d 347, 353, 94 S. Ct. 1105, 1110 (1974).  Counsel for the defense should be allowed to expose facts from which the trier of fact could draw inferences relating to the reliability of witness testimony.  Davis, 415 U.S. at 318, 39 L. Ed. 2d at 355, 94 S. Ct. at 1111; People v. Averhart, 311 Ill. App. 3d 492, 497 (1999).

In the instant case, the record reflects that Officer Stevens testified during trial that he did not see defendant operate a motor vehicle, and Stevens was aware of no admissions by defendant regarding his operation of the vehicle.  The trial court precluded defense counsel from inquiring about Stevens' contrary testimony before the grand jury where he testified as follows:

> "GRAND JUROR: Is it an offense if you are not driving, in a
>
> parked position?
>
> OFFICER STEVENS: Technically, under Illinois State law,
>
> it is even an offense of drunk driving if you are asleep behind the
>
> wheel, in the back seat of the car, keys in the front and engine off

on private property. But he was parked on the pavement. He had just finished driving. He was out drinking earlier."

At trial, the following exchange occurred during which the trial court precluded defense counsel's question about the previous testimony:

"[DEFENSE COUNSEL]: Officer, you testified before the Grand Jury in this matter, is that correct?

OFFICER STEVENS: Yes.

[DEFENSE COUNSEL]: And you testified regarding the facts and circumstances of this arrest, as you testified to them today; is that correct?

OFFICER STEVENS: I testified to the best of my recollection, that's all I can say, counsel.

[DEFENSE COUNSEL]: Did you tell the Grand Jury that the defendant had been driving his vehicle that night?

[THE STATE]: Objection.

THE COURT: Sustained."

The previous testimony about defendant by Officer Stevens to the grand jury that "He had just finished driving" directly impeached the prior trial testimony by Stevens that he did not see defendant operate a motor vehicle and defendant did not admit to operating a motor vehicle. During trial, defense counsel attempted to impeach Officer Stevens with his contradictory grand

jury testimony to corroborate defendant's theory of the case, that aggressiveness and exaggeration by Officer Stevens were the reasons for the erroneous arrest of defendant.

The trial court brushed aside the significance of the impeachment and ruled that even if Stevens had been impeached it would not have changed the circumstances surrounding the case. Defense counsel argues that the impeachment was not collateral because it could have been used to "illustrate the lengths to which Stevens would go to see his arrest result in a felony charge and conviction."

Evidence of misleading testimony by a key witness is hardly collateral, and the defendant has the right to develop his theory of the case. Averhart, 311 Ill. App. 3d at 497-98. The exposure of hostile motivation of a witness in testifying is a proper and important function of the constitutionally protected right of cross-examination. Davis, 415 U.S.308, 39 L. Ed. 2d 347, 94 S. Ct. 1105. Such cross-examination may concern any matter that goes to explain, modify, discredit, impeach or destroy the testimony of the witness. People v. Aughinbaugh, 36 Ill. 2d 320 (1967).

Defense counsel should be permitted to expose facts from which the trier of fact could appropriately draw inferences relating to the credibility and reliability of the witness. Davis, 415 U.S. at 316, 39 L. Ed. 2d at 354, 94 S. Ct. at 1110. In the instant case, the defense theory was that since Officer Stevens was willing to mislead the grand jury in order to secure defendant's indictment, it was reasonable to infer that he was similarly willing to mislead the trier of fact in order to obtain defendant's conviction. Defense counsel argued that Stevens had an incentive to ensure defendant was convicted because his "Top Cop" status would be improved.

31

Consequently, impeaching evidence of his prior inconsistent statement would bolster this argument as well as corroborate the theory of defense. Officer Stevens was the only witness for the prosecution. Defendant had the right to test the truth of his testimony and should be allowed to question Officer Stevens about this relevant area of impeachment on retrial. People v. Harris, 123 Ill. 2d 113, 145 (1988).

The State additionally argues that defense counsel failed to provide the proper foundation for impeaching Officer Stevens because counsel "never introduced the 'substance' of the particular grand jury testimonial statement defendant sought to impeach Officer Stevens with." The State acknowledges that defense counsel asked Officer Stevens, "Did you tell the Grand Jury that the defendant had been driving his vehicle that night?" However, the State challenges the foundation provided by defense counsel because counsel failed to direct Officer Stevens "either by publication or through a tendered copy of the grand jury transcript, to what particular portion of Officer Stevens' former grand jury testimony defendant was referring to when he was attempting to impeach Officer Stevens."

The foundation requirement for impeaching a witness with a prior inconsistent statement "is satisfied by presenting the place, circumstances and substance of the earlier statement to the witness and giving [the witness] an opportunity to explain the inconsistency." People v. Moore, 301 Ill. App. 3d 728, 732 (1999), citing People v. Smith, 78 Ill. 2d 298 (1980). While we agree with the State that reading the exact question and answer to a witness is the better method of providing foundation for impeachment, we are also mindful that "it is not always necessary to repeat the question and answer." People v. Dixon, 28 Ill. 2d 122, 124 (1963). On retrial, if

defense counsel chooses to pursue this impeachment, counsel is to present the place, circumstances and substance of the grand jury statement to Officer Stevens by confronting him with the exact question and answer and then giving the Officer an opportunity to explain any inconsistencies.

SUFFICIENCY OF THE EVIDENCE

Defendant argues he "was not proven guilty of driving or being in actual physical control of a vehicle while under the influence of alcohol beyond a reasonable doubt." The State argues the record reflects more than sufficient evidence of defendant's intoxication, as well as physical control by defendant of the vehicle, to sustain the conviction beyond a reasonable doubt.

In addressing a challenge to the sufficiency of the evidence, the reviewing court determines whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); People v. Cooper, 194 Ill. 2d 419, 430-31 (2000). It is not the job of the appellate court to second-guess the trial court or retry the defendant on appeal. People v. Villareal, 198 Ill. 2d 209, 231 (2001). We may not substitute our judgment for that of the trial court and will not reverse a conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. People v. Lundy, 334 Ill. App. 3d 819, 825 (2002).

To sustain a conviction for aggravated driving under the influence of alcohol, the prosecution at trial must prove the defendant (1) drove a vehicle, and (2) did so while under the

33

influence of alcohol. 625 ILCS 5/11-501(a)(2), (d)(1)(A) (West 2002); People v. Long, 316 Ill. App. 3d 919, 926 (2000).

Credible testimony from the arresting officer is sufficient to sustain a conviction for driving under the influence of alcohol; no scientific proof of intoxication need be offered in order to sustain the conviction. People v. Elliott, 337 Ill. App. 3d 275, 281 (2003). Relevant evidence of the defendant's mental and physical impairment includes but is not limited to testimony by an officer as to the defendant's appearance, speech, or conduct, testimony that the officer detected the odor of an alcoholic beverage on the defendant's breath, and testimony that the defendant failed a field sobriety test. Elliott, 337 Ill. App. 3d at 281. In the instant case, defendant argued the State failed to prove defendant was in actual physical control of the vehicle and failed to prove defendant was under the influence of alcohol. We take each argument in turn.

The Illinois Supreme Court has recognized that whether a motorist is in actual physical control of a vehicle "is determined on a case-by-case basis giving consideration to factors such as whether the motorist is positioned in the driver's seat of the vehicle, has possession of the ignition key and has the physical capability of starting the engine and moving the vehicle." City of Naperville v. Watson, 175 Ill. 2d 399, 402 (1997), citing People v. Davis, 205 Ill. App. 3d 431, 435 (1990).

Defendant acknowledges that Officer Stevens testified defendant's car was parked with the engine running; however, defendant contends the State failed to prove physical control. We reject defendant's argument. Defendant was found in the driver's seat, unconscious, slumped over the driving wheel at approximately 2:30 a.m. on May 8, 2002. The engine of the vehicle

34

was running. The record reflects more than sufficient evidence to prove beyond a reasonable doubt that defendant was in actual physical control of the motor vehicle.

Defendant additionally argues that the testimony of Officer Stevens did not prove that defendant was under the influence of alcohol. We are mindful that Michael Nameche and Jan Robinson both testified defendant consumed no alcohol between 9 p.m. and midnight. Jan Robinson testified that both she and defendant had a couple of drinks at Kelsey's, one with dinner and one following dinner. However, according to Jan, defendant consumed no alcohol between midnight and 1:30 a.m.

We further note the record reflects that after Jan Robinson and defendant left Kelsey's on May 8, 2002, at 1:30 p.m., she went home and defendant went to the Sturgeous bar. Accordingly, Jan Robinson did not know what, if any, alcohol was consumed by defendant between 1:30 a.m. and 2:30 a.m.

Officer Stevens testified during trial that defendant stated "I had too much to drink, but I'm home now." That statement was only one factor which Stevens considered in rendering his opinion that defendant was under the influence of alcohol. Officer Stevens testified during his police career he had the opportunity to observe thousands of individuals under the influence of alcohol. Officer Stevens articulated the many factors he considered in reaching the conclusion that defendant was under the influence of alcohol as demonstrated by his following testimony:

> "The fact that when I appeared on the scene he appeared
>
> unconscious; that when I tapped on his window for 30 seconds,
>
> there was no response; when I opened the door and shook him for

two minutes, there was no response; I'm talking to him loudly, there was no response; when I finally wake him up, he openly admitted that he had too much to drink; that he had a very strong odor of alcoholic beverage on his breath; that he had a slurred and mumbled speech, sometimes his speech was so mumbled that I had to have him repeat what he said because it didn't make sense; he needed assistance out of the vehicle, in my opinion, so he wouldn't fall down; when he exited the vehicle, he wasn't able to stand up straight for about a minute when he got out of the vehicle; he was staggering on the scene a few times that he would walk back and forward to talk to the paramedics, and also he needed assistance to step up into the squadron, and he also refused the field sobriety tests. In addition to that, when I asked him for his driver's license, he patted himself down first and tried to find his wallet and couldn't find it even though it was in his back pants pocket. I handed him his wallet and asked him to find his driver's license. He was not able to find his own driver's license after looking through his wallet for about a minute, even though his driver's license was in plain view, in the little plastic partition in the center of his wallet which was apparently designed for that purpose. Based on all those things, it was my opinion he was under the

influence of alcohol."

The record sufficiently demonstrates evidence beyond a reasonable doubt that defendant was under the influence of alcohol. We find the testimony of Officer Stevens was more than sufficient proof of defendant's guilt beyond a reasonable doubt. We do not believe that a rational trier of fact could have found defendant not guilty, as the State's evidence was not so improbable or unsatisfactory so as to create a reasonable doubt. Accordingly, we find that the evidence was sufficient to sustain defendant's conviction for driving under the influence of alcohol. Therefore, there is no double jeopardy bar to defendant being retried. People v. Taylor, 76 Ill. 2d 289, 309 (1979).

For the reasons previously discussed, the trial court's ruling on the motion to suppress is affirmed. However, the defendant's conviction is vacated, and the case is remanded for retrial consistent with this opinion.

Reversed and remanded with directions.

GALLAGHER and NEVILLE, JJ., concur.