# Illinois Official Reports

## Appellate Court

---

### *People v. May*, 2021 IL App (4th) 190893

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT D. MAY JR., Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-19-0893 |
| Filed | September 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 18-CF-675; the Hon. Phoebe S. Bowers, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | James E. Chadd, Catherine K. Hart, and Gregory G. Peterson, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Scott Rueter, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Timothy J. Londrigan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Justices Turner and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a bench trial, defendant, Robert D. May Jr., was convicted of three counts of aggravated driving under the influence of alcohol (DUI) and one count of driving while his driver's license was revoked and then sentenced to four, concurrently imposed terms of four years' imprisonment. Defendant appeals, arguing (1) the State failed to prove him guilty of two of the counts of aggravated DUI, where it did not present any evidence at trial establishing that he had prior DUI violations and that his license was revoked for a DUI violation at the time he committed the charged DUI; (2) the trial court erroneously accepted his waiver of his right to a jury trial, where it did not appropriately admonish him to ensure his waiver was understandingly made; and (3) his convictions on two of the counts of aggravated DUI violate the one-act, one-crime rule, where the convictions on the three counts of aggravated DUI stem from the same physical act. We affirm in part and vacate in part.

¶ 2                     I. BACKGROUND

¶ 3                     A. Information

¶ 4      In May 2018, the State charged defendant by information with three counts of aggravated DUI (counts I through III) (625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(1)(G), (d)(1)(I), (d)(2)(A), (d)(2)(C) (West 2018)) and one count of driving while his driver's license was revoked (count IV) (*id.* § 6-303(a), (d)). With respect to counts I through III, each of those counts alleged defendant violated subsection 11-501(a)(2) of the Illinois Vehicle Code (Code) (*id.* § 11-501(a)(2)) in that, on or about May 6, 2018, he drove or was in actual physical control of a motor vehicle while under the influence of alcohol. Count I further alleged defendant's unlawful conduct constituted an aggravated offense, which subjected him to an elevated sentencing classification, a Class 2 felony, and heightened penalties in that it occurred when he had three prior DUI violations. *Id.* § 11-501(d)(1)(A), (d)(2)(C). Count II further alleged defendant's unlawful conduct constituted an aggravated offense, which subjected him to an elevated sentencing classification, a Class 4 felony, and heightened penalties in that it occurred when his driving privileges were revoked for a DUI violation. *Id.* § 11-501(d)(1)(G), (d)(2)(A). Count III further alleged defendant's unlawful conduct constituted an aggravated offense, which subjected him to an elevated sentencing classification, a Class 4 felony, and heightened penalties in that it occurred at a time when he knew or should have known the vehicle he was driving was not covered by a liability insurance policy. *Id.* § 11-501(d)(1)(I), (d)(2)(A).

¶ 5                   B. Jury Trial Waiver

¶ 6      In April 2019, the trial court held a hearing, at which defendant appeared with counsel. At the beginning of the hearing, defense counsel informed the trial court, "Mr. May is wanting to waive jury trial and set this matter for a bench trial." The court later examined defendant as follows:

> "THE COURT: All right. Mr. May, you want to come up here for me. Mr. May, your attorney has indicated that you wish to waive your right to a jury trial. That is your constitutional right to be—to have a jury trial. Is that what you wish to do today?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And is this your signature on the written jury trial waiver, sir?

THE DEFENDANT: Yes.

THE COURT: And are you knowingly and voluntarily waiving your right to a jury trial today?

THE DEFENDANT: Yes.

THE COURT: Show written jury trial waiver on file."

A copy of count I of the information is contained in the record on appeal and includes an apparent signature of defendant under language indicating, "I hereby waive the right to a trial by jury in this cause." After hearing from defense counsel and defendant and receiving the written jury trial waiver, the court scheduled a "bench trial" for later that year. In the months that followed, defendant appeared with counsel at various hearings, during which the court, the State, and/or defense counsel made references to the upcoming "bench trial."

¶ 7                                C. Bench Trial

¶ 8        In October 2019, the trial court held a bench trial. The following is gleaned from the evidence presented.

¶ 9        On May 6, 2018, around 1:20 a.m., police officer Eric Havens responded to the scene of a crashed vehicle in Decatur. The driver of the crashed vehicle, a woman, was injured. Sometime after his arrival at the scene, Officer Havens noticed defendant. Officer Havens testified defendant looked "more dressed up" as if he was "coming from an event."

¶ 10       Officer Havens spoke with defendant, who reported the driver of the crashed vehicle was his wife. During the conversation, Officer Havens noticed defendant "smelled of alcohol," had slurred speech, swayed back and forth, and stumbled. Defendant stated he wanted to go with his wife to the hospital. Officer Havens asked defendant how he was planning on doing that, to which defendant stated he was going to follow his wife. Officer Havens asked defendant how he arrived at the scene, to which defendant told Officer Havens that information was not important.

¶ 11       Officer Havens spoke with another police officer at the scene about defendant's condition and the fact he was unsure how defendant arrived at the scene. Officer Havens testified a security guard at nearby business, Dana Embrey, then informed him that she observed defendant arrive in a van, which was parked across the roadway, and that defendant had exited from the front driver's side of the vehicle. Officer Havens observed the van, which he testified was not present when he arrived at the scene.

¶ 12       After speaking with Embrey, Officer Havens went and spoke with other individuals who were nearby outside. Those individuals reported they heard a crash and then came outside from their homes to see what happened. Officer Havens then spoke with Embrey again to confirm her account. During that conversation, Embrey pointed toward defendant and stated she thought defendant was the person she observed exit the van.

¶ 13       Officer Havens spoke with defendant again. This conversation occurred in front of Officer Havens's patrol vehicle and was recorded. An audio and video recording of the conversation was entered into evidence. During the conversation, defendant swayed back and forth, struggled with balancing himself, had slurred speech, was unable to get his identification card out of his wallet, admitted to having a "couple of shots," and refused field sobriety testing. Officer Havens again asked defendant how he arrived at the scene, to which defendant reported his mother had driven him there. Officer Havens then asked defendant where his mother was,

to which defendant stated she was at home. Defendant called his mother from his cell phone and placed the call on speakerphone. Defendant asked his mother to pick him up from where she had dropped him off. Officer Havens testified defendant's mother "kept saying she didn't know where he was at and asked him what he was doing."

¶ 14 Officer Havens formed the opinion, based upon his training, experience, and observations, that defendant drove to the scene while impaired by alcohol. Officer Havens arrested defendant. During a search incident to arrest, the keys to the van were not discovered.

¶ 15 Officer Havens testified about an incident that occurred after defendant was transported to the jail. Defendant stated he needed to use the restroom, to which Officer Havens told him he could use it once they entered the "intox room." Defendant then proceeded to pull down his pants, expose himself, and indicate he was going to relieve himself. Officer Havens then moved defendant into the intox room to use the bathroom. An audio and video recording of defendant inside the intox room was entered into evidence. Defendant refused to take a breath test.

¶ 16 The van at the scene was inventoried and towed. No keys or proof of insurance was discovered. The van was registered to defendant's mother.

¶ 17 Embrey testified to observing the van arrive at the scene and believing there were two people inside the van upon its arrival. Embrey testified she did not see who exited from the front driver's side of the vehicle and did not recall Officer Havens asking her about the same. Embrey spoke with a private investigator in April 2019 and told the investigator she believed defendant exited the van from the passenger side. Embrey acknowledged she "may not be exactly correct" on which side she saw defendant exit the van.

¶ 18 Defendant's mother testified she drove defendant to the scene in her van. After arriving at the scene, she walked to a friend's home a couple blocks away, taking the keys to the van with her. She did not stay with defendant because she did not "see eye to eye" with defendant's wife. Defendant's mother testified she later received a telephone call from defendant but did not speak with him. After learning her van had been towed, she went and obtained it with her keys.

¶ 19 The State submitted a certified copy of a driving abstract for defendant, which indicated: "REVOCATION WAS IN EFFECT ON 05-06-2018." It did not contain any other information.

¶ 20 Based upon the evidence presented, the trial court found the State had proven defendant guilty of the charges contained in counts I through IV. With respect to counts I through III, the court specifically found "the State has proven beyond a reasonable doubt that Mr. May did drive under the influence of alcohol."

¶ 21                                         D. Posttrial Proceedings

¶ 22 Following the bench trial, defendant filed a motion for a new trial, arguing the State failed to prove that he drove or was in actual physical control of a vehicle. The trial court denied defendant's motion and then proceeded to sentencing. At sentencing, the State presented evidence that defendant had three prior DUI violations and that defendant's license was revoked for a DUI violation at the time he committed the charged DUI. The court entered judgment convicting defendant of counts I through IV and sentencing him to four, concurrently imposed terms of four years' imprisonment.

¶ 23 This appeal followed.

¶ 24                                        II. ANALYSIS

¶ 25        On appeal, defendant argues (1) the State failed to prove him guilty of counts I and II, where it did not present any evidence at trial establishing that he had prior DUI violations and that his license was revoked for a DUI violation at the time he committed the charged DUI; (2) the trial court erroneously accepted his waiver of his right to a jury trial, where it did not appropriately admonish him to ensure his waiver was understandingly made; and (3) his convictions on two of the counts of aggravated DUI violate the one-act, one-crime rule, where the convictions on the three counts of aggravated DUI stem from the same physical act.

¶ 26                                A. Sufficiency of the Evidence

¶ 27        First, defendant argues the State failed to prove him guilty of counts I and II, where it did not present any evidence at trial establishing that he had prior DUI violations and that his license was revoked for a DUI violation at the time he committed the charged DUI. The State disagrees, contending it was not required to present any such evidence at trial to prove defendant guilty of counts I and II.

¶ 28        When presented with a challenge to the sufficiency of the evidence, our inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64, 162 N.E.3d 223. In this case, it is undisputed the State did not present any evidence at trial to establish that defendant had prior DUI violations or that defendant's license was revoked for a DUI violation at the time he committed the charged DUI. The dispute, instead, concerns whether the existence of the prior DUI violations and the license revocation for a DUI violation at the time of the charged DUI were essential elements of the charged offenses, which the State was required to prove at trial. To resolve this controversy, we must construe the statute under which defendant was convicted, section 11-501 of the Code (625 ILCS 5/11-501 (West 2018)). This presents an issue of law, which we review *de novo*. *People v. Newton*, 2018 IL 122958, ¶ 14, 120 N.E.3d 948.

¶ 29        When construing a statute, our primary objective "is to ascertain and give effect to the legislature's intent." *People v. Ashley*, 2020 IL 123989, ¶ 36, 162 N.E.3d 200. The best indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* We further must "view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.*

¶ 30        Section 11-501 of the Code (625 ILCS 5/11-501 (West 2018)) is titled: "Driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds or any combination thereof." It provides as follows:

              "(a) A person shall not drive or be in actual physical control of any vehicle within this State while:

                   (1) the alcohol concentration in the person's blood, other bodily substance, or breath is 0.08 or more based on the definition of blood and breath units in Section 11-501.2;

                   (2) under the influence of alcohol;

                   (3) under the influence of any intoxicating compound or combination of intoxicating compounds to a degree that renders the person incapable of driving safely;

(4) under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving;

(5) under the combined influence of alcohol, other drug or drugs, or intoxicating compound or compounds to a degree that renders the person incapable of safely driving;

(6) there is any amount of a drug, substance, or compound in the person's breath, blood, other bodily substance, or urine resulting from the unlawful use or consumption of a controlled substance listed in the Illinois Controlled Substances Act, an intoxicating compound listed in the Use of Intoxicating Compounds Act, or methamphetamine as listed in the Methamphetamine Control and Community Protection Act; or

(7) the person has, within 2 hours of driving or being in actual physical control of a vehicle, a tetrahydrocannabinol concentration in the person's whole blood or other bodily substance as defined in paragraph 6 of subsection (a) of Section 11-501.2 of this Code. Subject to all other requirements and provisions under this Section, this paragraph (7) does not apply to the lawful consumption of cannabis by a qualifying patient licensed under the Compassionate Use of Medical Cannabis Pilot Program Act who is in possession of a valid registry card issued under that Act, unless that person is impaired by the use of cannabis.

(b) The fact that any person charged with violating this Section is or has been legally entitled to use alcohol, cannabis under the Compassionate Use of Medical Cannabis Pilot Program Act, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, shall not constitute a defense against any charge of violating this Section.

(c) Penalties.

(1) Except as otherwise provided in this Section, any person convicted of violating subsection (a) of this Section is guilty of a Class A misdemeanor.

(2) A person who violates subsection (a) or a similar provision a second time shall be sentenced to a mandatory minimum term of either 5 days of imprisonment or 240 hours of community service in addition to any other criminal or administrative sanction.

(3) A person who violates subsection (a) is subject to 6 months of imprisonment, an additional mandatory minimum fine of $1,000, and 25 days of community service in a program benefiting children if the person was transporting a person under the age of 16 at the time of the violation.

(4) A person who violates subsection (a) a first time, if the alcohol concentration in his or her blood, breath, other bodily substance, or urine was 0.16 or more based on the definition of blood, breath, other bodily substance, or urine units in Section 11-501.2, shall be subject, in addition to any other penalty that may be imposed, to a mandatory minimum of 100 hours of community service and a mandatory minimum fine of $500.

(5) A person who violates subsection (a) a second time, if at the time of the second violation the alcohol concentration in his or her blood, breath, other bodily substance, or urine was 0.16 or more based on the definition of blood, breath, other

bodily substance, or urine units in Section 11-501.2, shall be subject, in addition to any other penalty that may be imposed, to a mandatory minimum of 2 days of imprisonment and a mandatory minimum fine of $1,250.

(d) Aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof.

(1) Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof if:

(A) the person committed a violation of subsection (a) or a similar provision for the third or subsequent time;

(B) the person committed a violation of subsection (a) while driving a school bus with one or more passengers on board;

(C) the person in committing a violation of subsection (a) was involved in a motor vehicle accident that resulted in great bodily harm or permanent disability or disfigurement to another, when the violation was a proximate cause of the injuries;

(D) the person committed a violation of subsection (a) and has been previously convicted of violating Section 9-3 of the Criminal Code of 1961 or the Criminal Code of 2012 or a similar provision of a law of another state relating to reckless homicide in which the person was determined to have been under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds as an element of the offense or the person has previously been convicted under subparagraph (C) or subparagraph (F) of this paragraph (1);

(E) the person, in committing a violation of subsection (a) while driving at any speed in a school speed zone at a time when a speed limit of 20 miles per hour was in effect under subsection (a) of Section 11-605 of this Code, was involved in a motor vehicle accident that resulted in bodily harm, other than great bodily harm or permanent disability or disfigurement, to another person, when the violation of subsection (a) was a proximate cause of the bodily harm;

(F) the person, in committing a violation of subsection (a), was involved in a motor vehicle, snowmobile, all-terrain vehicle, or watercraft accident that resulted in the death of another person, when the violation of subsection (a) was a proximate cause of the death;

(G) the person committed a violation of subsection (a) during a period in which the defendant's driving privileges are revoked or suspended, where the revocation or suspension was for a violation of subsection (a) or a similar provision, Section 11-501.1, paragraph (b) of Section 11-401, or for reckless homicide as defined in Section 9-3 of the Criminal Code of 1961 or the Criminal Code of 2012;

(H) the person committed the violation while he or she did not possess a driver's license or permit or a restricted driving permit or a judicial driving permit or a monitoring device driving permit;

(I) the person committed the violation while he or she knew or should have known that the vehicle he or she was driving was not covered by a liability insurance policy;

(J) the person in committing a violation of subsection (a) was involved in a motor vehicle accident that resulted in bodily harm, but not great bodily harm, to the child under the age of 16 being transported by the person, if the violation was the proximate cause of the injury;

(K) the person in committing a second violation of subsection (a) or a similar provision was transporting a person under the age of 16; or

(L) the person committed a violation of subsection (a) of this Section while transporting one or more passengers in a vehicle for-hire.

(2)(A) Except as provided otherwise, a person convicted of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof is guilty of a Class 4 felony.

(B) A third violation of this Section or a similar provision is a Class 2 felony. If at the time of the third violation the alcohol concentration in his or her blood, breath, other bodily substance, or urine was 0.16 or more based on the definition of blood, breath, other bodily substance, or urine units in Section 11-501.2, a mandatory minimum of 90 days of imprisonment and a mandatory minimum fine of $2,500 shall be imposed in addition to any other criminal or administrative sanction. If at the time of the third violation, the defendant was transporting a person under the age of 16, a mandatory fine of $25,000 and 25 days of community service in a program benefiting children shall be imposed in addition to any other criminal or administrative sanction.

(C) A fourth violation of this Section or a similar provision is a Class 2 felony, for which a sentence of probation or conditional discharge may not be imposed. If at the time of the violation, the alcohol concentration in the defendant's blood, breath, other bodily substance, or urine was 0.16 or more based on the definition of blood, breath, other bodily substance, or urine units in Section 11-501.2, a mandatory minimum fine of $5,000 shall be imposed in addition to any other criminal or administrative sanction. If at the time of the fourth violation, the defendant was transporting a person under the age of 16 a mandatory fine of $25,000 and 25 days of community service in a program benefiting children shall be imposed in addition to any other criminal or administrative sanction.

(D) A fifth violation of this Section or a similar provision is a Class 1 felony, for which a sentence of probation or conditional discharge may not be imposed. If at the time of the violation, the alcohol concentration in the defendant's blood, breath, other bodily substance, or urine was 0.16 or more based on the definition of blood, breath, other bodily substance, or urine units in Section 11-501.2, a mandatory minimum fine of $5,000 shall be imposed in addition to any other criminal or administrative sanction. If at the time of the fifth violation, the defendant was transporting a person under the age of 16, a mandatory fine of

$25,000, and 25 days of community service in a program benefiting children shall be imposed in addition to any other criminal or administrative sanction.

(E) A sixth or subsequent violation of this Section or similar provision is a Class X felony. If at the time of the violation, the alcohol concentration in the defendant's blood, breath, other bodily substance, or urine was 0.16 or more based on the definition of blood, breath, other bodily substance, or urine units in Section 11-501.2, a mandatory minimum fine of $5,000 shall be imposed in addition to any other criminal or administrative sanction. If at the time of the violation, the defendant was transporting a person under the age of 16, a mandatory fine of $25,000 and 25 days of community service in a program benefiting children shall be imposed in addition to any other criminal or administrative sanction.

(F) For a violation of subparagraph (C) of paragraph (1) of this subsection (d), the defendant, if sentenced to a term of imprisonment, shall be sentenced to not less than one year nor more than 12 years.

(G) A violation of subparagraph (F) of paragraph (1) of this subsection (d) is a Class 2 felony, for which the defendant, unless the court determines that extraordinary circumstances exist and require probation, shall be sentenced to: (i) a term of imprisonment of not less than 3 years and not more than 14 years if the violation resulted in the death of one person; or (ii) a term of imprisonment of not less than 6 years and not more than 28 years if the violation resulted in the deaths of 2 or more persons.

(H) For a violation of subparagraph (J) of paragraph (1) of this subsection (d), a mandatory fine of $2,500, and 25 days of community service in a program benefiting children shall be imposed in addition to any other criminal or administrative sanction.

(I) A violation of subparagraph (K) of paragraph (1) of this subsection (d), is a Class 2 felony and a mandatory fine of $2,500, and 25 days of community service in a program benefiting children shall be imposed in addition to any other criminal or administrative sanction. If the child being transported suffered bodily harm, but not great bodily harm, in a motor vehicle accident, and the violation was the proximate cause of that injury, a mandatory fine of $5,000 and 25 days of community service in a program benefiting children shall be imposed in addition to any other criminal or administrative sanction.

(J) A violation of subparagraph (D) of paragraph (1) of this subsection (d) is a Class 3 felony, for which a sentence of probation or conditional discharge may not be imposed.

(3) Any person sentenced under this subsection (d) who receives a term of probation or conditional discharge must serve a minimum term of either 480 hours of community service or 10 days of imprisonment as a condition of the probation or conditional discharge in addition to any other criminal or administrative sanction.

(e) Any reference to a prior violation of subsection (a) or a similar provision includes any violation of a provision of a local ordinance or a provision of a law of

another state or an offense committed on a military installation that is similar to a violation of subsection (a) of this Section.

(f) The imposition of a mandatory term of imprisonment or assignment of community service for a violation of this Section shall not be suspended or reduced by the court.

(g) Any penalty imposed for driving with a license that has been revoked for a previous violation of subsection (a) of this Section shall be in addition to the penalty imposed for any subsequent violation of subsection (a).

(h) For any prosecution under this Section, a certified copy of the driving abstract of the defendant shall be admitted as proof of any prior conviction." *Id.*

¶ 31    Applying the principles of statutory construction set forth above, we glean the following from section 11-501. Subsection (a) sets forth various ways in which a violation of section 11-501 can be proven. See *id.* § 11-501(a)(1) to (a)(7). Relevant here, subsection (a)(2) provides it is a violation of section 11-501 for any person to drive or be in actual physical control of a vehicle while under the influence of alcohol. *Id.* § 11-501(a)(2). Subsection (c) sets forth the sentencing classification and certain penalties for a violation of section 11-501. See *id.* § 11-501(c)(1) to (c)(5). It provides a first violation is generally a Class A misdemeanor. *Id.* § 11-501(c)(1). Subsection (d) sets forth various ways in which a violation of section 11-501 will result in an aggravated offense (see *id.* § 11-501(d)(1)(A) to (d)(1)(L)) and an elevated sentencing classification and heightened penalties (see *id.* § 11-501(d)(2) to (d)(3)). Relevant here, subsection (d)(1)(A) provides that a violation of subsection (a) will result in an aggravated offense where it is the person's third or subsequent DUI violation, and subsection (d)(2)(C) elevates a fourth violation to a Class 2 felony. *Id.* § 11-501(d)(1)(A), (d)(2)(C). Also relevant here, subsection (d)(1)(G) provides that a violation of subsection (a) will result in an aggravated offense where the person committed the violation when driving privileges were revoked as a result of a prior DUI violation, and subsection (d)(2)(A) elevates that violation to a Class 4 felony. *Id.* § 11-501(d)(1)(G), (d)(2)(A).

¶ 32    In our review, section 11-501 establishes a detailed framework for the criminal offense of DUI. The essential elements of that offense are set forth in subsection (a). See *id.* § 11-501(a)(1) to (a)(7). Subsection (d), in turn, sets forth sentencing enhancement factors, which, if proven, will result in an aggravated offense and an elevated sentencing classification and heightened penalties. See *id.* § 11-501(d)(1) to (d)(3). Accordingly, we conclude the existence of prior DUI violations and a license revocation for a DUI violation at the time of the charged DUI were not essential elements of the charged offenses that the State was required to prove at trial but rather sentencing enhancement factors.

¶ 33    To be clear, our interpretation of section 11-501 does not mean the sentencing enhancement factors set forth in subsection (d) need not be proven. To the contrary, due process requires all facts necessary to establish the statutory sentencing range within which the defendant's sentence falls must be proven beyond a reasonable doubt. *People v. Swift*, 202 Ill. 2d 378, 383, 781 N.E.2d 292, 295 (2002) (discussing the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Ordinarily, evidence of a sentencing enhancement factor should be presented to the trier of fact for a determination of the factor's existence; however, the exception, applicable here, is where the sentencing enhancement factor is based on a prior conviction, in which case the evidence should be presented to the trier of law for a determination of the factor's existence. 725 ILCS 5/111-3(c-5) (West 2018) ("[I]f an alleged fact (other than the

- 10 -

fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt."); *People v. Owens*, 2016 IL App (4th) 140090, ¶ 39, 59 N.E.3d 187 (finding a license revocation based on a DUI is the functional equivalent of a prior conviction, which need not be proven to the jury but instead is reserved for sentencing). Here, evidence of the sentencing enhancement factors which were based upon prior convictions was properly presented to the trier of law at sentencing for determinations of the factors' existence. Defendant does not raise any complaints with the sufficiency of that evidence or the trial court's determinations that the sentencing enhancement factors had been proven.

¶ 34        Defendant acknowledges our interpretation of section 11-501 is supported by a line of cases that found the existence of prior DUI violations is not an element under section 11-501. See, *e.g.*, *People v. Thompson*, 328 Ill. App. 3d 360, 364, 765 N.E.2d 1209, 1212 (2002) ("the prior convictions are not elements of the [aggravated DUI] offense" (emphasis omitted)); *People v. Robinson*, 368 Ill. App. 3d 963, 977, 859 N.E.2d 232, 246 (2006) ("Prior DUI violations are not an element of an aggravated DUI charge."); *People v. Lush*, 372 Ill. App. 3d 629, 635, 867 N.E.2d 1199, 1203 (2007) ("[P]rior DUI convictions do not constitute an element of an aggravated DUI charge."). Defendant further does not dispute that, since the above cases were decided, the legislature has made multiple amendments to section 11-501, none of which expressed a legislative intent contrary to the positions set forth in those cases. See *People v. Way*, 2017 IL 120023, ¶ 27, 89 N.E.3d 355 ("We assume not only that the General Assembly acts with full knowledge of previous judicial decisions but also that its silence on an issue in the face of those decisions indicates its acquiescence to them.").

¶ 35        Nevertheless, defendant contends our interpretation of section of 11-501 and any authority supporting that interpretation cannot withstand the supreme court's more recent analysis in *People v. Zimmerman*, 239 Ill. 2d 491, 942 N.E.2d 1228 (2010). We disagree. Contrary to defendant's assertion, the statute construed in *Zimmerman*, section 24-1.6 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/24-1.6 (West 2006)), is not structurally similar to section 11-501. Section 24-1.6 sets forth the offense of aggravated unlawful use of a weapon, an offense separate and distinct from the offense of unlawful use of a weapon set forth in section 24-1 of the Criminal Code (*id.* § 24-1). *Zimmerman*, 239 Ill. 2d at 500. Conversely, aggravated DUI is not a separate and distinct criminal offense from simple or misdemeanor DUI. See *People v. Quigley*, 183 Ill. 2d 1, 10, 697 N.E.2d 735, 739-40 (1998) ("[A]ggravated DUI occurs when an individual commits some form of misdemeanor DUI, in violation of paragraph (a), and other circumstances are present. The legislature added aggravating factors that change the misdemeanor DUI to a Class 4 felony. The essential and underlying criminal act, however, remains the same: driving while under the influence."). As such, we find the analysis in *Zimmerman* does not change our interpretation of section 11-501.

¶ 36        Defendant also contends our interpretation and any authority supporting that interpretation are illogical, given the supreme court's previous finding in *People v. Martin*, 2011 IL 109102, 955 N.E.2d 1058, that subsection (d)(1)(F) sets forth an essential element of the offense of aggravated DUI, and its previous pronouncement in *Zimmerman*, 239 Ill. 2d at 500, that "it would be illogical for the General Assembly to include a sentence-enhancing factor in a list

- 11 -

with eight other factors which constitute an element of the offense." We disagree. Contrary to defendant's assertion, *Martin* did not find subsection (d)(1)(F) set forth an essential element; instead, the court merely found the proximate cause requirement of that subsection was proven beyond a reasonable doubt. *Martin*, 2011 IL 109102, ¶¶ 20, 28. As discussed above, sentencing enhancement factors must be proven beyond a reasonable doubt. In fact, we note the supreme court in *Martin* emphasized its position that aggravated DUI is not a separate offense— "aggravated DUI is simply misdemeanor DUI with an aggravating factor, which turns the offense into a felony." *Id.* ¶ 24.

¶ 37 Defendant further cites *People v. Mumaugh*, 2018 IL App (3d) 140961, 94 N.E.3d 237, in support of his contention that the factors set forth in subsection (d)(1) are essential elements. In that case, the dispute concerned whether the State proved the proximate cause requirement under section 11-501(d)(1)(C). *Id.* ¶ 24. In addressing that dispute, the court stated the proximate cause requirement was an element of the offense of aggravated DUI. *Id.* ¶¶ 24, 37. To the extent the court in *Mumaugh* found section 11-501(d)(1)(C) set forth an essential element as opposed to a sentencing enhancement factor that had to be proven, we disagree with that position. In fact, we note another panel of that district issued a recent order rejecting that position and interpreting section 11-501 in the same manner set forth in this opinion. See *People v. Brose*, 2021 IL App (3d) 180630-U, ¶ 18 ("[T]he unambiguous structure reveals the legislature's intent that subsections (c) and (d) provide sentence enhancements for successive DUI convictions rather than additional elements of the offense.").

¶ 38 In a final attempt to discredit our interpretation, defendant cites the following statement and parenthetical citation from the supreme court in *People ex rel. Glasgow v. Carlson*, 2016 IL 120544, ¶ 19, 72 N.E.3d 340:

> "[I]t is worth noting that committing a third DUI is only one of several ways to be guilty of aggravated DUI under section 11-501. See 625 ILCS 5/11-501(d)(1)(B) to (d)(1)(L) (West 2014) (identifying other circumstances that constitute aggravated DUI, none predicated on the commission of a third DUI)."

Defendant contends "[a] list of different 'ways' that a crime may be committed is a list of alternative elements of that crime, not a list of sentencing factors." We disagree. The characterization of subsection (d)(1) as setting forth a list of different "ways" in which a defendant can be guilty of aggravated DUI or "circumstances" that can constitute aggravated DUI is not a pronouncement that those "ways" or "circumstances" are essential elements that must be proven at trial as opposed to sentencing enhancement factors.

¶ 39 In summary, we reject defendant's position that the State was required to present evidence at trial establishing that he had prior DUI violations and that his license was revoked at the time he committed the charged DUI in order to prove him guilty of counts I and II. Defendant has otherwise not presented any alternative basis to attack the sufficiency of the evidence to sustain his convictions.

¶ 40                                    B. Jury Trial Waiver

¶ 41 Next, defendant argues the trial court erroneously accepted his waiver of his right to a jury trial, where it did not appropriately admonish him to ensure his waiver was understandingly made. The State disagrees, contending defendant made a valid waiver of his right to a jury trial.

¶ 42    At the outset, defendant concedes he forfeited the issue by failing to raise it before the trial court but asserts his forfeiture may be excused under the plain-error doctrine. The plain-error doctrine provides a "narrow and limited exception" to the general rule of forfeiture. *People v. Reese*, 2017 IL 120011, ¶ 72, 102 N.E.3d 126. Under the plain-error doctrine, a reviewing court may disregard a defendant's forfeiture and consider an unpreserved claim of error in two circumstances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Harvey*, 2018 IL 122325, ¶ 15, 115 N.E.3d 172.

The defendant bears the burden of persuasion in establishing plain error. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015. Our analysis under the plain-error doctrine begins with whether defendant has shown the occurrence of a clear or obvious error. *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475.

¶ 43    The right to a trial by jury is guaranteed by both our federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. That right, however, may be waived by a defendant, so long as it is done knowingly and voluntarily. *People v. Bannister*, 232 Ill. 2d 52, 65, 902 N.E.2d 571, 581 (2008); see also 725 ILCS 5/103-6 (West 2018) ("Every person accused of an offense shall have the right to a trial by jury unless *** understandingly waived by defendant in open court ***.").

¶ 44    The trial court has the duty of ensuring the validity of a jury trial waiver. *Bannister*, 232 Ill. 2d at 66. "The determination of whether a jury waiver is valid cannot rest on any precise formula, but rather depends on the facts and circumstances of each particular case." *Id.* "[A] trial court need not give any specific admonition or advice for a defendant to make an effective jury waiver." *Id.* Where, as here, the facts are not in dispute on review, the validity of a jury trial waiver is a legal issue, which we review *de novo*. *People v. Bracey*, 213 Ill. 2d 265, 270, 821 N.E.2d 253, 255 (2004).

¶ 45    In this case, defense counsel, in defendant's presence and over no objection from him, expressed to the trial court defendant's desire to waive his right to a jury trial. The court then admonished defendant of his constitutional right to have a jury trial and asked if it was, in fact, defendant's desire to waive that right, which defendant confirmed. The court also showed defendant a written jury trial waiver, which has an apparent signature of defendant under language indicating, "I hereby waive the right to a trial by jury in this cause," and defendant confirmed it was his signature on the written waiver. The court asked defendant whether he was knowingly and voluntarily waiving his right to a jury trial, to which defendant stated, "Yes." The court accepted defendant's jury trial waiver and scheduled a "bench trial" for later that year.

¶ 46    While defendant acknowledges his jury waiver was voluntarily made, he disputes whether it was done knowingly. Specifically, he contends "nothing in the record indicates [he] understood his decision." We disagree. "When a defendant waives the right to a jury trial, the pivotal knowledge that the defendant must understand—with its attendant consequences—is that the facts of the case will be determined by a judge and not a jury." *Bannister*, 232 Ill. 2d

at 69. Here, the record clearly shows defendant, who was represented by counsel, confirmed that he had previously signed a written jury trial waiver and that he knowingly wanted to waive his right to a trial by jury. At no point did defendant, an individual who had substantial experience with the criminal court system, express a lack of understanding as to his right to a jury trial, the function of a jury trial, or the function of a bench trial. This record supports a finding that defendant knowingly waived his right to a jury trial. Accordingly, we find no error in the trial court's acceptance of defendant's jury trial waiver. Defendant has failed to establish clear or obvious error, and therefore, we hold him to his forfeiture.

¶ 47    Although we find defendant has failed to establish any error with the trial court's acceptance of his waiver of his right to a jury trial, we note any claimed error on this issue could have been avoided by simply asking and eliciting a response from defendant as to whether he understood that his waiver of a right to a trial by jury meant the facts of the case will be determined by a judge and not a jury. See *People v. Chitwood*, 67 Ill. 2d 443, 448-49, 367 N.E.2d 1331, 1334 (1977) (" 'It takes but a few moments of a trial judge's time to directly elicit from a defendant a response indicating that he understands that he is entitled to a jury trial, *that he understands what a jury trial is*, and whether or not he wishes to be tried by a jury or by the court without a jury. This simple procedure incorporated in the record will reduce the countless contentions raised in the reviewing courts about jury waivers.' " (Emphasis added.) (quoting *People v. Bell*, 104 Ill. App. 2d 479, 482, 244 N.E.2d 321, 323 (1968))).

¶ 48                          C. One-Act, One-Crime Rule

¶ 49    Last, defendant argues his convictions on two of the counts of aggravated DUI violate the one-act, one-crime rule, where the convictions on the three counts of aggravated DUI stem from the same physical act. The State agrees.

¶ 50    Defendant concedes he forfeited the issue by failing to raise it before the trial court but asserts his forfeiture may be excused under the plain-error doctrine. Again, our analysis under the plain-error doctrine begins with whether defendant has shown the occurrence of a clear or obvious error. *Eppinger*, 2013 IL 114121, ¶ 19.

¶ 51    "The one-act, one-crime rule prohibits convictions for multiple offenses that are based on precisely the same physical act." *People v. Smith*, 2019 IL 123901, ¶ 13, 155 N.E.3d 396. An " '[a]ct' " is defined as "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977). An alleged violation of the one-act, one-crime rule is reviewed *de novo*. *Smith*, 2019 IL 123901, ¶ 15.

¶ 52    In this case, defendant's convictions on counts I though III are premised on the same physical act—an instance of driving while under the influence of alcohol on the morning of May 6, 2018. Accordingly, two of defendant's three convictions violate the one-act, one-crime rule. Defendant has established clear and obvious error.

¶ 53    Our analysis under the plain-error doctrine turns next to whether defendant has shown the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or that the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Harvey*, 2018 IL 122325, ¶ 15. Our supreme court has recognized a one-act, one-crime violation is reviewable under the plain-error doctrine because it affects the integrity of the judicial process. *Smith*, 2019 IL 123901, ¶ 14.

Accordingly, we excuse defendant's forfeiture under the second prong of the plain-error doctrine and now consider the appropriate relief for the one-act, one-crime violation.

Where, on review, there are multiple convictions based on the same physical act, the convictions on the less serious offenses should be vacated and the conviction on the more serious offense should stand. See *People v. Artis*, 232 Ill. 2d 156, 170, 902 N.E.2d 677, 686 (2009) ("[A] sentence should be imposed on the more serious offense and the less serious offense should be vacated."). "In determining which offense is the more serious, a reviewing court compares the relative punishments prescribed by the legislature for each offense." *Id.*

In this case, defendant's conviction on count I, which is a Class 2 felony, is a more serious offense than his convictions on counts II and III, which are Class 4 felonies. Accordingly, we vacate defendant's convictions on counts II and III.

### III. CONCLUSION

We vacate defendant's convictions on counts II and III but otherwise affirm the trial court's judgment.

Affirmed in part and vacated in part.