NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250690-U

NO. 4-25-0690

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 13, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Knox County |
| DIMARI TERRY, | ) | No. 24CF100 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Andrew J. Doyle, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Zenoff and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted the Office of the State Appellate Defender's motion to withdraw as appellate counsel and affirmed defendant's conviction and sentence for aggravated battery, as the appeal presents no potentially meritorious issue for review.

¶ 2    Following a bench trial, defendant Dimari Terry was convicted of one count of aggravated battery (720 ILCS 5/12-3.05(d)(6) (West 2022)) and sentenced to three years and six months in prison. On appeal, the Office of the State Appellate Defender (OSAD) now seeks to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the basis it cannot raise any potentially meritorious argument. We grant OSAD's motion to withdraw and affirm the judgment of the trial court.

¶ 3    I. BACKGROUND

¶ 4    A. Charges and Jury Waiver

¶ 5          In February 2024, the State charged defendant with two counts of aggravated battery (720 ILCS 5/12-3.05(d)(6) (West 2022)). The charges arose out of allegations that defendant, who was incarcerated at Hill Correctional Center, struck two individuals he knew to be employees of the Illinois Department of Corrections (DOC) after they entered his cell. Specifically, count I alleged defendant made physical contact of an insulting or provoking nature with Marshall Hendricks by jumping from his top bunk and striking Hendricks with his elbow. Count II alleged defendant struck James Johnson's shoulder and chest with a closed fist, causing pain and bruising.

¶ 6          In August 2024, defendant's counsel informed the trial court defendant sought to waive his right to a jury trial. The court asked defendant whether this was in fact his intention, and defendant confirmed it was. Before accepting the waiver, the court asked defendant whether anyone forced, threatened, or promised him anything to obtain his waiver. Defendant answered, "No, Your Honor." The court then informed defendant that, after waiving a jury trial, "it's highly unlikely you get that right back" barring a "major circumstance." Although defendant noted this was "new information" to him, he stated he spoke with his attorney about everything "except that part" and still wanted to waive a jury trial. The court informed defendant that upon waiving a jury trial, his options "would be to have a bench trial or to have some type of fully negotiated plea agreement." When the court asked if he still wished to proceed, defendant answered, "Yeah. I'm good with it." Defendant then signed a written jury waiver form, which provided he understood he would "receive a trial by the Court without a jury present." When defendant's counsel affirmed that he and defendant "came to the decision" after speaking "on more than one occasion" and advising defendant "of everything," the court accepted defendant's jury waiver.

¶ 7                                    B. Bench Trial

¶ 8          The matter proceeded to a bench trial in January 2025. Before evidence was

presented, the State informed the trial court that because defendant had a prior conviction for aggravated kidnapping and was in custody at the time of the instant offense, he was eligible for an extended sentence of 3 to 14 years in prison that was required to run consecutively to the sentence he was currently serving. The State noted it submitted several plea offers to the defense but received no counteroffers.

¶ 9 Defendant's counsel acknowledged he spoke to defendant about the State's offers and the possibility he might receive an extended-term sentence but relayed that defendant still wanted to pursue a trial. Accordingly, the trial court admonished defendant that if he proceeded to trial, he faced a possible prison term of 3 to 14 years running consecutively to the term he was currently serving. Defendant noted he understood and wanted to proceed.

¶ 10 The bench trial commenced thereafter. The State presented the testimony of Hendricks, Michael Downs, and Johnson, and the evidence is summarized as follows.

¶ 11 On October 10, 2023, Hendricks, Downs, Johnson, and Chad Toops—each employed as corrections officers for DOC and wearing DOC uniforms—approached a cell housing defendant and Paul Phillips to investigate an odor of something burning. According to Downs, correctional officers generally were the only individuals permitted to be with inmates at their cells. After observing smoke billowing out of the cell, they opened it. Inside, defendant was lying down on the top bunk of the bed, and Hendricks observed Phillips grab suspected contraband from a shelf and throw it in the toilet. Hendricks entered the cell and stepped toward Phillips to prevent him from flushing the toilet. As he did so, Phillips tried to strike him but missed, and Hendricks "bear-hugged" Phillips to restrain him.

¶ 12 Phillips then yelled to defendant for help, at which point defendant "came off the top bunk." Hendricks testified when defendant did so, he "basically gave me an elbow drop to the

back of my head, hit me—drove his elbow right to the back of my head." Hendricks acknowledged he did not observe defendant come off the bunk because he was wrestling with Phillips. He also did not observe defendant hit him, but he felt something "pointy and *** hard" strike him in the back of the head. Downs and Toops then grabbed Phillips and directed him to the bed while Hendricks took defendant "to the ground." Downs testified because his face was in the bed while trying to restrain Phillips, he "didn't see really much what had happened" and only "assumed" defendant got off the bunk.

¶ 13       Johnson testified that when he entered the cell, he observed Downs and Toops restraining Phillips while Hendricks was on top of defendant on the ground. Johnson moved to assist Hendricks, who appeared to be winded, and told him, "Hey, I got this." Hendricks moved away from defendant to the ground behind Johnson. According to Johnson, at that point defendant's arms were underneath him. He placed defendant's left hand in handcuffs and rolled him over to secure his right arm. Defendant, who was facing Johnson, swung at him with his right hand, striking his left shoulder and causing it to bruise. Johnson eventually placed defendant's right arm in the handcuffs, and defendant was escorted out of the cell.

¶ 14       The defense presented the testimony of Phillips and defendant. According to Phillips, prior to the altercation, the power was out in several cells, including his and defendant's. When the corrections officers arrived at the cell to investigate, defendant was asleep on the top bunk of the bed. Hendricks told Phillips he needed to step out of the cell so a search could be conducted, but Phillips refused to leave. Hendricks then grabbed Phillips, and the other officers entered the cell. Phillips testified Downs put him in a chokehold, and they both fell backward onto the bed, with Phillips on his back on top of Downs.

¶ 15       During this altercation, defendant sat up, and the officers told him to "cuff up."

Defendant testified he used both hands to climb down from the top bunk, and Hendricks helped him. According to defendant and Phillips, defendant then placed his hands in front of him, but the officers turned him around and slammed him to the ground. Defendant claimed Johnson was so aggressively bending his left arm to handcuff him that it caused him injury, leading Toops to tell Johnson to "calm down." Thereafter, the officers handcuffed both of defendant's hands behind his back, lifted him by his arms, and escorted him out of the cell.

¶ 16 Defendant testified he did not hit Hendricks with his elbow or touch the back of his head. He further claimed while he was being handcuffed, he did not hit anyone because it was "impossible" to do so. He explained he was on his stomach with his arms behind his back in an enclosed cell, such that he could not roll over to strike anyone. Defendant denied making physical contact with any of the officers. Phillips, in turn, testified defendant did not strike or make any physical contact with the officers before he was put on the ground and he did not strike any of the officers while they were placing him in handcuffs. Phillips admitted, however, that because he was restrained by Downs on the bed, he could not see "the remainder of what was going on."

¶ 17 On cross-examination, Phillips admitted he was serving a 10-year sentence for aggravated battery and discharge of a firearm. Similarly, defendant acknowledged he had previously been convicted of aggravated kidnapping of a child under the age of 13, aggravated vehicular hijacking of a passenger under the age of 16, and possession of a stolen motor vehicle.

¶ 18 At the conclusion of the evidence, the trial court found defendant not guilty as to count I, explaining Hendricks's testimony indicated only that he "believed" defendant struck him with his elbow and no other evidence corroborated that belief or established defendant in fact did so beyond a reasonable doubt. However, the court found defendant guilty as to count II, noting Johnson's testimony that defendant struck him with his fist was based on his own observation of

the strike.

¶ 19                                C. Motion for New Trial

¶ 20        In February 2025, defendant filed a motion for new trial that was subsequently amended in May 2025. The motion argued the trial court erred in finding him guilty because the evidence was insufficient to support his conviction.

¶ 21        At the hearing on the motion, defendant argued the officers' testimony was not credible where, despite their claims that contraband was present in his cell, no evidence of any such contraband was introduced. Defendant also highlighted the testimony was inconsistent as to whether defendant was on his back or stomach when he was being handcuffed, it being impossible for him to have struck Johnson from the latter position.

¶ 22        The trial court denied defendant's motion for a new trial, noting it "gave appropriate weight to the testimony of the various witnesses" in finding defendant guilty.

¶ 23                                D. Sentencing

¶ 24        The case proceeded to sentencing in June 2025. A presentence investigation report confirmed defendant was convicted in September 2022 of possession of a stolen motor vehicle and sentenced to five years in prison. Additionally, in October 2022, defendant was convicted of aggravated kidnapping of a child under the age of 13 and aggravated vehicular hijacking of a passenger under the age of 16 and sentenced to a 10-year prison sentence, running concurrently with his 5-year sentence.

¶ 25        The trial court received several character letters on behalf of defendant from family and community members and admitted into evidence a disciplinary report detailing defendant's conduct infractions while in DOC. The report detailed approximately 20 offenses between December 2022 and September 2023, ranging from sexual misconduct and disobeying orders to

intimidating a corrections officer and causing a dangerous disturbance.

¶ 26    The State recommended that defendant be sentenced to four years and six months in prison. The State highlighted defendant had a criminal history, committed the instant offense while in DOC, and continued to violate DOC rules while incarcerated. The State also argued such a sentence was appropriate to deter others from engaging in similar conduct.

¶ 27    Defendant's counsel recommended that defendant be sentenced to probation or the minimum sentence of two years in prison. Counsel argued it was possible defendant may have involuntarily struck Johnson given the chaotic nature of the altercation, which occurred as he was waking up, such that the circumstances giving rise to the offense were unlikely to occur again.

¶ 28    In allocution, defendant maintained he did not commit the offense. He acknowledged he had a background of disciplinary actions against him but claimed none of them involved fights with others. He noted he had been incarcerated since he was 18 but had since matured and strove to make responsible decisions.

¶ 29    In announcing its sentence, the trial court noted it took into consideration the nature of the offense, the parties' arguments, the presentence investigation report, defendant's disciplinary record, his statement in allocution, and factors in aggravation and mitigation. The court explained that defendant had been "kind, polite, well-spoken, and appropriate in the courtroom." The court also noted the character letters indicated he had a family that supported him and referenced the murder of a family member that likely affected how defendant lived his life. However, the court emphasized defendant's DOC disciplinary report indicated he engaged in "several incidents of insolence, of disobeying direct orders, and sexual misconduct" that caused concern. Ultimately, given the nature of the offense and defendant's continued disciplinary issues in DOC, and to deter others from fighting corrections officers, the court sentenced defendant to

three years and six months in prison running consecutively to the sentence he was currently serving. Defendant did not file a postsentencing motion challenging his sentence.

¶ 30　　　　This appeal followed.

¶ 31　　　　　　　　　　II. ANALYSIS

¶ 32　　　　OSAD was appointed to represent defendant on appeal; it subsequently filed a motion for leave to withdraw as defendant's counsel, citing *Anders* and *People v. Jones*, 38 Ill. 2d 384 (1967). In her supporting memorandum of law, appellate counsel addressed whether meritorious arguments might be raised that (1) defendant's jury waiver was invalid, (2) the evidence was insufficient to sustain defendant's conviction, or (3) defendant's sentence was improper. Ultimately, counsel concluded an appeal in this case would be without arguable merit. Counsel mailed a copy of her motion to withdraw to defendant and advised him that he had the opportunity to respond to the motion and raise any issues he deemed reviewable. Defendant filed no response to the motion.

¶ 33　　　　For the reasons that follow, we agree this appeal presents no issues of arguable merit, grant appellate counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 34　　　　　　　　　　A. Jury Waiver

¶ 35　　　　OSAD contends no meritorious argument can be made that defendant's waiver of a jury trial was improper. We agree.

¶ 36　　　　Both the federal and state constitutions guarantee the right to a trial by jury. *People v. Bracey*, 213 Ill. 2d 265, 269 (2004); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Even so, a defendant may waive the right to a jury trial, so long as the waiver was knowingly and understandingly made. *Bracey*, 213 Ill. 2d at 269; 725 ILCS 5/103-6(i) (West 2024). The validity of a jury waiver cannot be determined through any particular formula, turning instead on the

particular facts and circumstances of each case. *Bracey*, 213 Ill. 2d at 269. Although a written waiver is required by section 115-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-1 (West 2024)), even adherence to this provision is not always dispositive of a valid waiver. *Bracey*, 213 Ill. 2d at 269-70. For a jury waiver to be considered effective, the trial court is not required to provide the defendant with any set admonition or advice. *Id.* at 270. Instead, a waiver is generally valid if made by defense counsel in the defendant's presence in open court and the defendant makes no objection. *Id.* Where, as here, the facts are not in dispute, the validity of a jury trial waiver is a legal issue that we review *de novo*. *People v. May*, 2021 IL App (4th) 190893, ¶ 44.

¶ 37    The record establishes that defendant knowingly and voluntarily waived his right to a jury trial. Defendant at no point raised any objection to his attorney's representation, made in his presence, that he intended to waive his right to a jury, and he expressly confirmed he wanted to do so. Defendant also affirmed that no one forced or promised him anything to secure his waiver. After informing defendant it was "unlikely" he could get his right to a jury trial back after waiving it, defendant noted this was "new information," but he explained his counsel spoke with him about everything "except that part" and that he wanted to proceed with his waiver. The court also informed defendant that if he waived his right to a jury trial, his remaining options would be to proceed via a bench trial or a negotiated plea agreement. Defendant again confirmed he wanted to waive his right to a jury trial. Thereafter, defendant signed a written jury waiver, which stated defendant understood he would "receive a trial by the Court without a jury present," and at no point did defendant express any lack of understanding as to his waiver, the function of a jury trial, or the function of a bench trial.

¶ 38    Because the record establishes defendant's waiver of his right to a jury trial was made knowingly and voluntarily, we agree with appellate counsel that any argument the waiver

was invalid would be meritless.

¶ 39                              B. Sufficiency of the Evidence

¶ 40          Next, OSAD contends no meritorious argument can be raised that the evidence was insufficient to sustain his conviction for aggravated battery. We agree.

¶ 41          In considering whether the State presented sufficient evidence to sustain a defendant's conviction, " 'a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. McKown*, 2021 IL App (4th) 190660, ¶ 49 (quoting *People v. Harris*, 2018 IL 121932, ¶ 26). We will not reverse a defendant's conviction " 'unless the evidence is so improbable or unsatisfactory that a reasonable doubt remains as to the defendant's guilt.' " *Id.* (quoting *Harris*, 2018 IL 121932, ¶ 26). "The trier of fact determines the credibility of the witnesses, decides what weight to give their testimony, resolves conflicts in the evidence, and draws reasonable inferences from that evidence." *People v. Swenson*, 2020 IL 124688, ¶ 36. Accordingly, we will not substitute our judgment for that of the trial court on these matters, nor will we reweigh the evidence. *People v. Dillard*, 2025 IL App (4th) 230739, ¶ 65.

¶ 42          To prove defendant committed aggravated battery as charged in count II, the State had to prove defendant committed a battery against an individual he knew to be an officer or employee of the State of Illinois while performing his or her official duties. 720 ILCS 5/12-3.05(d)(6) (West 2022). "A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (West 2022). Bodily harm can be established where there is evidence to show there was physical pain or damage to the

victim's body, such as lacerations, bruises, or abrasions. *People v. Mays*, 91 Ill. 2d 251, 256 (1982). "Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5(a) (West 2022).

¶ 43    In this case, sufficient evidence was presented to convict defendant of the aggravated battery of Johnson. First, no meritorious argument can be raised that the evidence failed to establish defendant knew Johnson was an employee of the State of Illinois performing his official duties. Whether a person acted with knowledge of a material fact may be inferred from circumstantial evidence. *People v. Reinking*, 2024 IL App (4th) 230486, ¶ 99. Circumstantial evidence, in turn, is proof of facts and circumstances from which the trier of fact, based on human experience, can infer other facts that typically and reasonably follow. *Id.* Here, the evidence presented showed defendant was incarcerated at Hill Correctional Center and that at the time of the altercation, Johnson was wearing his DOC uniform. Downs testified that only correctional officers generally were permitted to be with inmates at their cells. Defendant, in turn, testified that after being told by the officers to "cuff up," he complied and climbed down from the top bunk before placing his hands in front of him. Defendant also recounted Johnson's subsequent efforts to restrain him and escort him out of the cell. From this evidence, the trial court could reasonably infer that defendant, who complied with the orders of the officers wearing DOC uniforms, knew Johnson was an employee of the State of Illinois.

¶ 44    Nor can a meritorious argument be made that the evidence failed to establish defendant committed a battery against Johnson. Notably, the trial court need not search out all possible explanations compatible with innocence and elevate them to reasonable doubt. *People v. Howery*, 178 Ill. 2d 1, 37 (1997). Indeed, "the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant." *People v.*

*Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Here, Johnson explicitly testified that while he was attempting to restrain defendant in handcuffs, defendant struck him in his chest and shoulder with his right hand while facing him and that he suffered bruising as a result. Although defendant highlighted that Johnson's testimony was inconsistent with his testimony that it was "impossible" for him to hit anyone because he was on his stomach at the time Johnson tried to restrain him, it was for the trial court to resolve any such discrepancy as to the testimony. To that point, in announcing its judgment, the court specifically highlighted Johnson's testimony as the basis for its finding of guilt. As Johnson's testimony indicated defendant struck him in the chest and shoulder, resulting in bruising, the evidence showed defendant caused bodily harm as would constitute battery.

¶ 45          Accordingly, the State presented sufficient evidence to sustain defendant's conviction for aggravated battery, and we agree with appellate counsel that an argument that the evidence was insufficient to convict him of the offense would be meritless.

¶ 46                              C. Defendant's Sentence

¶ 47          Finally, OSAD argues that no meritorious argument can be made that defendant's sentence was improper because any such argument was forfeited and, in any event, the trial court properly sentenced defendant.

¶ 48          Initially, we agree that the defense forfeited any claim of sentencing error. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); see 730 ILCS 5/5-4.5-50(d) (West 2024) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence."); Ill. S. Ct. R.

605(a)(3)(B) (eff. Apr. 15, 2024) (noting that prior to taking an appeal, a defendant who seeks to challenge the correctness of the sentence or any aspect of the sentencing hearing must file in the trial court within 30 days of the date the sentence was imposed a written motion requesting the court to reconsider the sentence or consider any challenges to the sentencing hearing).

¶ 49　　Here, defendant did not object when the trial court issued its sentence, and he filed no postsentencing motion in the trial court setting forth any issues or claims of error regarding the sentence imposed or the sentencing hearing. Having failed to do so, any such claim is forfeited. *Hillier*, 237 Ill. 2d at 544.

¶ 50　　We acknowledge a forfeited argument pertaining to sentencing may still be reviewed for plain error. *Id.* at 545. To obtain relief under the plain-error doctrine, a defendant must first show that a clear or obvious error occurred. *Id.* "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.*

¶ 51　　Here, even under the plain-error doctrine, any claim of sentencing error would be meritless because we discern no clear or obvious error.

¶ 52　　A sentencing court has broad discretion when fashioning a sentence, and its sentencing decisions are entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Accordingly, we will not substitute our judgment for that of the trial court simply because we would have weighed these factors differently. *Id.* at 213. In fact, a sentence imposed within the statutory range provided by the legislature is presumed to be proper. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. We will alter a defendant's sentence only where the court abused its discretion. *Alexander*, 239 Ill. 2d at 212. A sentence is considered an abuse of discretion where it is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to

the nature of the offense.' " *Id.*

¶ 53      Defendant was convicted of aggravated battery. Aggravated battery is a Class 3 felony punishable by two to five years' imprisonment. 720 ILCS 5/12-3.05(d)(6), (h) (West 2022); 730 ILCS 5/5-4.5-40(a) (West 2024). However, the trial court may impose an extended-term sentence under certain circumstances, including

> "[w]hen a defendant is convicted of any felony, after having been previously convicted *** of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." 730 ILCS 5/5-5-3.2(b)(1) (West 2024).

When a defendant is convicted of a Class 3 felony and subject to an extended-term sentence, the trial court may impose a term of between 5 and 10 years' imprisonment. *Id.* § 5-4.5-40(a).

¶ 54      Here, in announcing its sentence, the trial court explained it considered the nature of the offense, the parties' arguments at the sentencing hearing, the presentence investigation report showing defendant's prior criminal history, his DOC disciplinary record, his statement in allocution, and factors in mitigation and aggravation. As to the factors in mitigation, the court acknowledged defendant was polite and appropriate in the courtroom, had a supportive family, as evidenced by character letters submitted by several people on his behalf, and had his life affected by the murder of a family member. As to the aggravating factors, the court highlighted defendant had multiple disciplinary issues at DOC, including engaging in sexual misconduct, disobeying orders, and causing dangerous disturbances. The court also determined that a prison sentence was necessary to deter others from physically engaging with correctional officers. Upon weighing these factors, the court sentenced defendant to three years and six months in prison. This sentence was

within the range of punishment defendant faced and well below the maximum extended-term sentence. There is nothing in the record to indicate the court considered any improper factors or otherwise abused its discretion. Nor did the court err in ordering defendant's sentence to run consecutively to the sentence he was already serving. Because defendant committed aggravated battery while he was in the custody of DOC, consecutive sentencing was mandated. See 730 ILCS 5/5-8-4(d)(6) (West 2024) ("If the defendant was in the custody of [DOC] at the time of the commission of the offense, the sentence shall be served consecutive to the sentence under which the defendant is held by [DOC].").

¶ 55          Accordingly, we find no error stemming from defendant's sentence, let alone a clear or obvious error. Absent a clear or obvious error, defendant cannot establish plain error. *People v. Maury*, 2025 IL App (4th) 220887, ¶ 93 ("[I]f there is no error, then there can be no plain error.").

¶ 56          Given the foregoing, we agree with appellate counsel that no meritorious argument can be made that defendant's sentence was improper.

¶ 57                              III. CONCLUSION

¶ 58          For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 59          Affirmed.